IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEVELOPERS SURETY AND<br>INDEMNITY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:15-cv-3465 |
| v. | ) | |
| BRANTLY DEVELOPMENT GROUP, INC., *et al*, | ) | |
| Defendants. | ) | |
| | ) | |

**<u>BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.  Legal standard for grant of summary judgment..................................................3

II.  The Indemnity Agreements are not specialties under seal................................4
    A.  Indem. Agr. 03 is not a specialty under seal ........................................6
    B.  Indem. Agr. 01 is not a specialty under seal ........................................7

III.  A purported perpetual waiver of limitations defenses is void .........................8

IV.  Plaintiff's claims asserted against Mr. and Mrs. Cole in Count II are barred by the statute of limitations....................................................................................9
    A.  Plaintiff's indemnification claim for amounts it paid to The Guardian Group, due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations.............................9
    B.  Indemnification claim for amounts paid to Dirt Plus, Inc. due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations....................................................11
    C.  Indemnification claim for amounts paid to Boyd & Dowgiallo due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations....................................................11
    D.  Indemnification claim for amounts paid to BG&E due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations............................................................................12
    E.  The amount of Plaintiff's aggregate claim that is barred by limitations depends upon when Plaintiff's indemnification claim accrued, and when the limitations period began to run ................................................14

[CHART]—Indem. Agr. 03 Claims against both Mr. and Mrs. Cole .............................16

V.  Summary judgment should be entered in favor of Mr. Cole on Count I to the extent claimed damages exceed $87,955.19, as damages in excess of this amount are barred by the statute of limitations.....................................................................17
    A.  Indemnification claim for amounts paid due to alleged default on obligations secured by Bond No. 890955S is barred by the statute of limitations.................17
    B.  Indemnification claim for amounts paid due to alleged default on obligations secured by Bond No. 891425S is barred by the statute of limitations.................18
    C.  Indemnification claim for amounts paid due to alleged default on obligations secured by Bond Nos. 890176S and 890955S are barred by the statute of limitations .........................................................................19
    D.  Attorneys' Fees ..................................................................................20
    E.  The amount of Plaintiff's Count I claim barred by limitations depends upon when Plaintiff's indemnification claim accrued, and when the limitations period began to run ................................................21

[CHART]—Indem. Agr. 01 Claims against Mr. Cole (there is no claim asserted against Mrs. Cole in Count I)...............................................................................22

VI.  Even if claims against Mrs. Cole were not barred by the Statute of Limitations, summary judgment should be granted in her favor because no signature of Mrs. Cole was notarized ................................................................................................23

VII.  Summary judgment should be granted in favor of Mr. and Mrs. Cole on Count III..........24

IX.  Conclusion ......................................................................................................26

Plaintiff is a national surety company that issued subdivision surety bonds for several real estate development projects undertaken by Defendants Brantly Development Group, Inc. ("Brantly"), Marshalee Woods Limited Partnership ("Marshalee"), Brantwood LLC ("Brantwood") and Bonnielass, LLC ("Bonnielass"). *Complaint, ¶¶ 1, 16.* Plaintiff alleges that Marshalee, Brantwood and Bonnielass defaulted on their obligations under these bonds, and further alleges that it incurred losses in excess of $308,987.25 as a result of these defaults. *Complaint, ¶¶ 17-18.* None of Brantly, Marshalee, Brantwood, or Bonnielass filed responsive pleadings in this action, and judgments of default were entered against these defendants on June 27, 2016. *Doc. 39.* This Motion for Summary Judgment is brought on behalf of non-defaulting Defendants Hugh F. Cole, Jr. ("Mr. Cole") and Glen Hannah Cole ("Mrs. Cole").

Mr. Cole and non-party John F. Liparini ("Mr. Liparini") executed and delivered to Plaintiff two indemnity agreements relating to the above bonds: Indemnity Agreement No. 13522-01 ("Indem. Agr. 01") and Indemnity Agreement No. 13522-03 ("Indem. Agr. 03").[1] *Complaint, ¶ 12.* Plaintiff makes no allegation that Mrs. Cole executed Indem. Agr. 01, but alleges that Mrs. Cole executed Indem. Agr. 03. *Complaint, ¶ 12.* Mrs. Cole has denied the averment of her execution of this document, *Answer (Doc. 14), p. 7*, and testified at her deposition that she did not believe she executed Indem. Agr. 03, *Dep. of G. Cole, pp. 37-38, 75-76*, despite the appearance of her purported signature on the document. She has

---

[1] Indem. Agr. 01 and Indem. Agr. 03 shall be referred to collectively herein as the "Indemnity Agreements". A copy of Indem. Agr. 01 is attached hereto as Exhibit A, and is also attached to the Complaint as its Exhibit A. A copy of Indem. Agr. 03 is attached hereto as Exhibit B, and is also attached to the Complaint as its Exhibit B.

previously filed a declaration in this action, stating that she has no recollection of executing

Indem. Agr. 03, and does not believe that she executed this document. *Decl. of G. Cole*

*(Doc. 26-5), ¶ 5.*[2] Mrs. Cole had an established practice of never entering into indemnity

agreements related to real estate developments pursued by her husband's business entities.

*Dep. of H. Cole, pp. 191-192; Dep. of G. Cole, p. 39.*   Mr. Cole has testified that he never

witnessed Mrs. Cole execute Indem. Agr. 03, and that he has no personal knowledge of Mrs.

Cole executing this document. *Decl. of H. Cole (Doc. 26-4), ¶¶ 5-6.*   Mr. Liparini also did not

witness Mrs. Cole execute Indem. Agr. 03, nor does he have personal knowledge of Mrs. Cole

having done so. *Decl. of J. Liparini (Doc. 26-3), ¶ 5.*

    Indem. Agr. 03 expressly requires that "ALL SIGNATURES MUST BE

ACKNOWLEDGED BY A NOTARY PUBLIC" (capitalization in original), but the

accompanying notary public certification page makes no mention of Mrs. Cole being present

when the document was executed, nor did the notary public purport to notarize or certify her

signature. *Exh. B.*   Plaintiff asserts that Mrs. Cole executed the document on January 6,

2004, *Dep. of Plaintiff p. 101*, the same day on which Mr. Cole and Mr. Liparini signed the

document.   In a declaration attached hereto as Exhibit C, however, the notary public affirms

that she listed, on the certification page of Indem. Agr. 03, the names of <u>all</u> persons that

executed the document in her presence. *Decl. of Maxen (Exh. Q), ¶ 7.*   She did not list Mrs.

Cole as being in attendance, and expresses certainty that Mrs. Cole did not execute the

indemnity agreement in her presence. *Decl. of Maxen, ¶¶ 7, 11.*   The notary public also

observed that the "execution date" stated on the first page of Indem. Agr. 03 is November 6,

---

[2] The previously filed Declarations of Mrs. Cole, Mr. Cole, and Mr. Liparini, are attached
hereto as Exhibits H, K, and N.

2003, while the notary public certification page that Plaintiff has provided for the document

is dated January 6, 2004, and testified that she would not have notarized a document that was

signed outside of her presence two months before. *Decl. of Maxen, ¶ 10.* All of the other

signature lines on the document have the signatory's name typed under the signature, with

the exception of the signature that purports to be Mrs. Cole's, which does not have her name

typed below the signature line.

I.  **Legal standard for grant of summary judgment**.

Summary judgment must be granted when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.*

*56(c)*. A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986). No genuine dispute of material fact exists if "the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *see also*

*Unus v. Kane*, 565 F.3d 103, 115 (4th Cir. 2009); *Williams v. Griffin*, 952 F.2d 820, 823 (4th

Cir. 1991).

The moving party bears the initial burden to show an absence of genuine factual

dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142

(1970). Summary judgment should be granted if, after adequate time for discovery, the

opposing party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hill v.*

*Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). To defeat summary

judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538, and may not rely on "conclusory allegations." *Twin Labs. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).

## II.    The Indemnity Agreements are not specialties under seal.

At Paragraph 12 of the Complaint, Plaintiff alleges that the Indemnity Agreements were executed under seal. A contract under seal would be subject to a twelve-year limitations period, as a specialty under Md. Code Ann., Cts. & Jud. Proc. § 5-102(a), while a contract not under seal is subject to a three-year limitations period. Md. Code Ann., Cts. & Jud. Proc. § 5-101.[3] It is clear, from the language of the Indemnity Agreements, that neither of these documents are under seal, nor are they specialties under Maryland law.[4]

A party's intention to have a contract be under seal must be clear and unambiguous. For example, the U.S. Court of Appeals for the Fourth Circuit, applying Maryland law in *Georgetown Coll. v. Madden*, 660 F.2d 91 (4th Cir. 1981), reviewed a contract that contained the word "(Seal)" in two places and was impressed with the corporate seals of the corporate parties to the contract, but did not contain the phrases "witness my hand and seal" or "signed and sealed," nor refer in its text to the fact that it was under seal. *Id.* at 96. The court held

---

[3] In Maryland, a statute of limitations is considered a "procedural" rule for choice of law purposes. *Lewis v. Waletzky*, 422 Md. 647, 664, 31 A.3d 123, 133 (2011). Procedural matters are governed by the law of the forum, i.e. Maryland in the present case. *Id.; Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 632-33, 925 A.2d 636, 656 (2007).

[4] The term "specialty" is treated as synonymous with "contract under seal." Black's Law Dictionary (9th ed. 2009); *see also Att'y Gen. of Md. v. Dickson*, 717 F. Supp. 1090, 1104 (D. Md. 1989); *Gen. Petrol. Corp. v. Seaboard Terminals Corp.*, 19 F. Supp. 882, 883-84 (D. Md. 1937); *Wellington Co. Profit Sharing Plan & Trust v. Shakiba, 18*0 Md. App. 576, 601-02, 952 A.2d 328, 342 (2008); *Allied Funding v. Huemmer*, 96 Md. App. 759, 766, 626 A.2d 1055 (1993).

that, without such indications that the parties intended to make the contract a sealed instrument, the combination of the word "(Seal)" and the corporate impressions was insufficient to establish such an intention. *Id.* Indeed, a long line of cases applying Maryland law stands for the proposition that the mere presence of a corporate seal on a contract executed on behalf of a corporation, without any other reference therein to the seal, does not make the contract a specialty, absent extrinsic evidence that showing that use of the seal was intended to make the paper a specialty. *Tipton v. Partner's Mgmt. Co.*, 364 Md. 419, 432, 773 A.2d 488, 496 (2001); *Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 155, 338 A.2d 275, 279 (1975); *Gen. Petrol. Corp. v. Seaboard Terminals Corp.*, 23 F. Supp. 137, 139 (D. Md. 1938). Similarly, when a seal is attached to the signature of one of the parties to a contract but not to that of another party, the contract as to the latter is a simple contract while as to the former it is a contract under seal. *Federalsburg*, 275 Md. at 156, 338 A.2d at 279; *Pearl Homing Co. v. Linthicum*, 112 Md. 27, 75 A. 737 (1910); *State use of Gilkeson v. Humbird*, 54 Md. 327 (1880); *Crowder v. Master Fin., Inc.*, 176 Md. App. 631, 652-53, 933 A.2d 905, 917-18 (2007).

Under the objective theory of contract interpretation that controls under Maryland law, "[t]he court's duty is to determine the intention of the parties as reflected in the terms of the contract." *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003). "[T]o determine whether [a contract] was executed under seal...[t]he court may first look to the body of the contract itself" to glean the parties' intent. *Rouse-Teachers Props. v. Md. Cas. Co.*, 358 Md. 575, 588, 750 A.2d 1281, 1287 (2000). For the reasons set forth below, the Indemnity Agreements do not approach the level of specificity necessary to establish them as sealed documents, as to Mr. or Mrs. Cole.

A.  <u>Indem. Agr. 03 is not a specialty under seal.</u>

Indem. Agr. 03 does not contain the word "(Seal)" anywhere within its text, which

Plaintiff concedes.  *Dep. of Plaintiff, p. 83*.  None of the signatures on the document have the

word "(Seal)" associated with them.  No text in the document expresses an intention by any

signatory that the document be under seal.  The Plaintiff's designated representative, at

deposition, could provide no facts supporting a contention that either of the Indemnity

Agreements are documents under seal.  *Dep. of Plaintiff, pp. 83-84*.  The fact that a raised

notary seal accompanies the notary public's certification of Mr. Cole's and Mr. Liparini's

signatures on Indem. Agr. 3 does not render the document "under seal" for limitations

purposes.  *See Lloyd v. Estate of Robbins*, 997 A.2d 733, 739 (Me. 2010); *Murray v. Wells*

*Fargo Home Mortg.*, 953 A.2d 308, 318 (D.C. 2008).  Even if a notary seal could be adopted

by a signatory to render the document "under seal" (which it cannot, under Maryland law),

the notary public did not certify Mrs. Cole's purported signature on the document, so under

no circumstances could the document be considered "under seal" for purposes of its

enforcement against Mrs. Cole.  *See Federalsburg*, 275 Md. at 156, 338 A.2d at 279) (A

sealed document in which some but not all signatures have indicia of being under seal will be

considered a sealed document only as to those signatories having a "seal" next to them).

The fact that a separate document, entitled "Resolution – Ratifying Indemnity" and

signed under seal by Mr. Cole, is attached to Indem. Agr. 03 has no bearing on the un-sealed

nature of Indem. Agr. 03.  By this "Resolution – Ratifying Indemnity" attachment, Brantly

acknowledged that its president, John F. Liparini, signed Idem. Agr. 03 on behalf of Brantly,

and ratified and confirmed Brantly's obligations under that agreement.  *Exh. A*.  The

"Resolution – Ratifying Indemnity" document is signed by Mr. Cole, in his role as secretary

of Brantly, but there is no indication that Mr. Cole individually was thereby placing his (un-

sealed) signature on Indem. Agr. 03 under seal.  While it is possible, under appropriate

circumstances, for the signor of a contract to adopt the seal of another signatory to the same

document (for example, when the instrument purports on its face to be sealed by all parties

signing it), *Federalsburg*, 275 Md. at 156, 338 A.2d 279, a seal of another may only be

adopted by a signatory when the seal was placed on the document before the relevant

signatory executed the document.  It is clear, on the face of the "Resolution – Ratifying

Indemnity" document, that it was signed under seal by Mr. Cole (in his capacity as secretary

of Brantly) <u>after</u> Mr. Cole and Mr. Liparini signed Indem. Agr. 03.  Mr. Cole, therefore,

could not have adopted the later-applied seal to the "Resolution – Ratifying Indemnity"

attachment to apply to his earlier signature on Indem. Agr. 03.

The raised seal of a notary public impressed after a signature does not render a

contract "under seal" as to that later signatory.  When there is a separate and distinct purpose

for the affixing of a seal to a document (such as certification of a signatory's identity by a

notary public), the mere affixing of such a notary seal is insufficient to lengthen the

limitations period.  *Tipton*, 364 Md. at 432, 773 A.2d at 496; *Georgetown Coll.*, 660 F.2d at

96.  For all of the foregoing reasons, Indem. Agr. 03 is not a document under seal, and a

three-year statute of limitations applies to its enforcement.  *Md. Cts. & Jud. Proc. Code § 5-*

*101*.

B.  <u>Indem. Agr. 01 is not a specialty under seal</u>.

The signatures of John F. Liparini on Indem. Agr. 01, on behalf of Brantly, have the

word "(Seal)" next to them.  The signature of Mr. Cole on this document in his individual

capacity does not have the word "(Seal)" associated with it, nor does the signature of Mr.

Liparini in his individual capacity.  Mrs. Cole's signature appears nowhere on Indem. Agr.

01.  As discussed above, the fact that Mr. Cole's and Mr. Liparini's signatures on Indem.

Agr. 01 are notarized does not render the document "under seal" for limitations purposes,

*Lloyd*, 997 A.2d at 739; *Murray*, 953 A.2d at 318, nor does the fact that a sealed document

entitled "Resolution – Ratifying Indemnity" is attached to the document.  Whether Agr. 01 is

a sealed document as to enforcement of its obligations against Brantly is not dispositive of

whether it is a sealed document with regard to enforcement against those signatories that do

not have a "(Seal)" next to their signatures (i.e., Mr. Cole, or Mr. Liparini in his individual

capacity). *Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 338 A.2d 275, 279-80

(1975).

## III.    A purported perpetual waiver of limitations defenses is void.

The Indemnity Agreements contain language purporting to waive limitations defenses

in any action brought to enforce the agreements. *Exh. A, § 8.4; Exh. B, § 8.4.*[5]  A permanent

waiver of the statute of limitations has been held by Maryland courts to offend public policy,

however, and is void under Maryland law.  *M. Abraham Ahmad v. Eastpines Terrace Apts.,*

*Inc.*, 200 Md. App. 362, 376, 28 A.3d 1, 23 (2011); *see also* 31 Williston on Contracts §

79:110 (4th ed. 2004); 3 Corbin on Contracts § 9.9 (rev. ed. 1996).  Even prior to the *Ahmad*

decision, enforcement of an agreement to waive the statute in limitations in perpetuity

required explicit language relating to the perpetual duration of the waiver. *Hunter-Boykin v.*

*George Wash. Univ.*, 132 F.3d 77, 82, 328 U.S. App. D.C. 22 (D.C. Cir. 1998); *Noel v.*

---

[5] The provision states: "8. WAIVERS.  The Principal and Indemnitor hereby waive and agree not to assert:…8.4. The defense of the Statute of Limitations in any action hereunder or for the collection of any claim or the performance of any obligation indemnified hereby."

*Baskin*, 131 F.2d 231, 232, 76 (1942) U.S. App. 332 (D.C. Cir. 1942); *M. Abraham Ahmad*, 200 Md. App. at 373, 28 A.3d at 18. No such express language is contained in the Indemnity Agreements at issue in this case. The purported waiver of limitations defenses found at § 8.4 of the Indemnity Agreements is therefore void and ineffectual.

**IV.    Plaintiff's claims asserted against Mr. and Mrs. Cole in Count II are barred by the statute of limitations**

Since the Indemnity Agreements are not specialties under seal and a three-year statute of limitations therefor applies to their enforcement, various claims made in the Complaint are barred by the statute of limitations. Specifically, as the present action was filed on November 13, 2015, claims asserted in Count II (which are against both Mr. and Mrs. Cole, and arise under Indem. Agr. 03, related to the Bonnielass project) are barred by the statute of limitations. The factual basis for Plaintiff's claims are set forth in detail in Plaintiff's Memorandum in Support of Motion for Entry of Default Judgment (Doc. 36-1), and the Affidavit of Jef Graham in support thereof (Doc. 36-2). Copies of these documents are attached hereto as Exhibits E and F.

    A. <u>Plaintiff's indemnification claim for amounts it paid to The Guardian Group, due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations.</u>

Howard County, Maryland Developer Agreement Performance Bond No. 893560S, in the penal sum of $108,480.00, named Bonnielass as principal and Howard County, Maryland as obligee, and guaranteed the performance of Bonnielass' completion of certain public infrastructure in the Bonnielass subdivision. *Pl's Memo in Support of Motion for Default Jgmt. (Doc. 36-1)(Exh. E hereto), ¶ 13(h); Aff. of J. Graham (Doc. 36-2)(Exh. F hereto), ¶ 11(h).* In March 2011, Howard County declared Bonnielass in default of its obligations

secured by this bond, and demanded that Plaintiff forfeit the entire penal sum of the bond.

*Pl's Memo in Support of Motion for Default Jgmt., ¶ 25; Aff. of J. Graham, ¶ 27.* A copy of

a letter from the Howard County Department of Public Works to Plaintiff, dated March 28,

2011, is attached hereto as Exhibit I. By this letter, the County placed Plaintiff on notice that

Performance Bond 893560S was in default. *Exh. I.* In response, Plaintiff sent a demand

letter to Bonnielass (a copy of which is attached hereto as Exhibit J), and retained a

construction consultant named the Guardian Group, Inc., to investigate Bonnielass' default

and the demand by Howard County, and thereafter to oversee completion of the work. *Pl's*

*Memo in Support of Motion for Default Jgmt., ¶ 26; Aff. of J. Graham, ¶ 28.* $15,556.26 of

Plaintiff's claims against Mr. and Mrs. Cole in Count II are based upon this work performed

by the Guardian Group, Inc. Id. Attached to the Affidavit of J. Graham (and hereto) as

Exhibit P are checks and payment receipts showing that this $15,556.26 amount was paid by

Plaintiff to the Guardian Group, Inc.,[6] and Plaintiff affirmed in deposition testimony that

these payment records are accurate. *Dep. of Plaintiff, pp. 28-30.* Since Plaintiff knew, by

March 2011, that Howard County had declared Bonnielass in default of its obligations

secured by this bond, *Exh. I; Pl's Memo in Support of Motion for Default Jgmt., ¶ 25; Aff. of*

*J. Graham, ¶ 27,* and this was more than three years prior to Plaintiff filing suit, Plaintiff's

claim for indemnification of this amount against Mr. and Mrs. Cole is barred by the statute of

limitations.

---

[6] Not only was Plaintiff aware of Bonnielass' default and of the resulting indemnification claim more than three years before Plaintiff brought suit on November 13, 2015, but $10,169.69 of this amount was actually paid by Plaintiff to the Guardian Group, Inc. more than three years before bringing suit. *Exh. P.*

B. Indemnification claim for amounts paid to Dirt Plus, Inc. due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations.

In response to Howard County's declaration of default and demand on Performance Bond No. 893560S, Plaintiff also retained Dirt Plus, Inc. to complete the work at the Bonnielass subdivision. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 27; Aff. of J. Graham, ¶¶ 29, 33.* $56,746.22 of Plaintiff's claims against Mr. and Mrs. Cole in Count II are based upon this work performed by Dirt Plus, Inc. Id. Attached to the Affidavit of J. Graham (and hereto) as Exhibit P are checks and payment receipts showing that this $56,746.22 was paid by Plaintiff to Dirt Plus, Inc.,[7] and Plaintiff affirmed in deposition testimony that these payment records are accurate. *Dep. of Plaintiff, pp. 46-53, and Exhs. 59, 62, 65 thereto.* As noted above, the Howard County Department of Public Works gave Plaintiff notice of Bonnielass' default on Performance Bond 893560S by letter of March 28, 2011, *Exh. I*, and Plaintiff sent a demand letter to Bonnielass. *Exh. J.* Since Plaintiff knew, by March 2011, that Bonnielass was in default of its obligations secured by this bond, *Exh. I; Pl's Memo in Support of Motion for Default Jgmt., ¶ 25; Aff. of J. Graham, ¶ 27*, and this was more than three years prior to Plaintiff filing suit, Plaintiff's claim for indemnification of this amount against Mr. and Mrs. Cole is barred by the statute of limitations.

C. Indemnification claim for amounts paid to Boyd & Dowgiallo due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations.

Plaintiff also retained Boyd & Dowgiallo, PA in response to Howard County's declaration of default and demand on Performance Bond No. 893560S, to perform

---

[7] $50,996.22 of this amount was paid by Plaintiff to Dirt Plus, Inc. on or before November 13, 2012. *Exh. P; Dep. of Plaintiff, pp. 46-53, and Exhs. 59, 62, 65 thereto.*

professional engineering services in support of the completion of the Bonnielass subdivision. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 28; Aff. of J. Graham, ¶¶ 30, 33.* $11,626.55 of Plaintiff's claims against Mr. and Mrs. Cole in Count II are based upon this work performed by Boyd & Dowgiallo, PA.  Id.  Attached to the Affidavit of J. Graham (and hereto) as Exhibit P are checks and payment receipts showing $11,626.55 was paid by Plaintiff to Boyd & Dowgiallo, PA,[8] and Plaintiff affirmed in deposition that these payment records are accurate. *Dep. of Plaintiff, pp. 48-52, and Exhs. 61, 63, 64 thereto.*  As noted above, the Howard County Department of Public Works gave notice to Plaintiff of Bonnielass' default on Performance Bond 893560S by letter of March 28, 2011, *Exh. I*, and Plaintiff sent a demand letter to Bonnielass. *Exh. J.*  Since Plaintiff knew, by March 2011, that Bonnielass was in default of its obligations secured by this bond, *Exh. I; Pl's Memo in Support of Motion for Default Jgmt., ¶ 25; Aff. of J. Graham, ¶ 27,* and this was more than three years prior to Plaintiff filing suit, Plaintiff's claim for indemnification of this amount against Mr. and Mrs. Cole is barred by the statute of limitations.

D. <u>Indemnification claim for amounts paid to BG&E due to alleged default on obligations secured by Performance Bond No. 893560S is barred by the statute of limitations.</u>

Plaintiffs relocated a telephone pole in order to secure release of Performance Bond No. 893560S, and paid BG&E for this relocation. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 29; Aff. of J. Graham, ¶¶ 31, 33.*  $5,539.00 of Plaintiff's claims against Mr.

---

[8] Not only was Plaintiff aware of Bonnielass' default on the bond and of the amount of the resulting indemnification claim more than three years before Plaintiff brought suit on November 13, 2015, but $5,044.05 of this amount was paid by Plaintiff to the Boyd & Dowgiallo, PA more than three years before bringing suit. *Exh. P.*

and Mrs. Cole in Count II are based upon this work performed by BG&E.  Id.  Attached to

the Affidavit of J. Graham (and hereto) as Exhibit P are checks and payment receipts

showing this $5,539.00 amount was paid by Plaintiff to BG&E,[9] and Plaintiff affirmed in

deposition that these payment records are accurate. *Dep. of Plaintiff, pp. 48-52, and Exhs. 61,*

*63, 64 thereto.*  As noted above, the Howard County Department of Public Works gave

notice to Plaintiff of Bonnielass' default on Performance Bond 893560S by letter of March

28, 2011, *Exh. I*, and Plaintiff sent a demand letter to Bonnielass.  *Exh. J.* Since Plaintiff

knew, by March 2011, that Bonnielass was in default of its obligations secured by this bond,

*Exh. I; Pl's Memo in Support of Motion for Default Jgmt.,* ¶ *25; Aff. of J. Graham,* ¶ *27,* and

this was more than three years prior to Plaintiff filing suit, Plaintiff's claim for

indemnification of this amount against Mr. and Mrs. Cole is barred by the statute of

limitations.

In summary, Plaintiff asserts that it paid a total of $89,468.03 to secure the release of

Performance Bond No. 893560S on the Bonnielass project, *Pl's Memo in Support of Motion*

*for Default Jgmt.,* ¶ *30; Aff. of J. Graham,* ¶ *32,* and Plaintiff seeks indemnification in this

amount from Mr. and Mrs. Cole in Count II.  *Complaint, pp. 10-11.*  It is clear, however, that

Plaintiff was aware by March 2011 (four and a half years before bringing suit against Mr.

and Mrs. Cole), that Howard County had declared Bonnielass in default of its obligations

secured on the performance bond. *Exh. I; Pl's Memo in Support of Motion for Default Jgmt.,*

¶ *25; Aff. of J. Graham,* ¶ *27.*  Moreover, Plaintiff actually paid out $71,748.96 of this

$89,468.03 more than three years before bringing the present lawsuit. *Exh. P.*  Since Indem.

---

[9] This $5,539.00 payment was made to BG&E more than three years before Plaintiff brought
suit. *Exh. P; Dep. of Plaintiff, pp. 48-52, and Exhs. 61, 63, 64 thereto.*

Agr. 03 is not a specialty, and a three-year statute of limitations applies to its enforcement, the claims asserted in Count II are barred by the statute of limitations, and summary judgment must be granted in favor of Mr. and Mrs. Cole on Count II.

E. The amount of Plaintiff's Count II claim barred by limitations depends upon when Plaintiff's indemnification claim accrued, and when the limitations period began to run.

Generally, an action for indemnification accrues, and the limitations period commences, not at the time of the underlying transaction but when the would-be indemnitee pays the judgment arising from the underlying transaction. *Hanscome v. Perry*, 75 Md. App. 605, 614, 542 A.2d 421, 425 (1988). In *Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 942 A.2d 722 (2008), the Maryland Court of Appeals considered a product liability case involving defective building material, and the "settlement rule." In the process of reviewing the Restatement (Second) of Contracts, the court observed that a breach of contract sometimes results in claims by third parties against the injured party. *Id.* at 386, 942 A.2d at 732-33. Comment (c) to the Restatement recites that a party that has breached a contract will be liable for the amount of any judgment against the injured party, together with his reasonable expenses in litigation, if the party had reason to foresee such expenditures as the probable result of his breach at the time he made the contract. *Restatement (Second) of Contracts*, Comment (c); *Pulte Home*, 403 Md. at 386, 942 A.2d at 733. The comment also notes, however, that the injured party is allowed to recover the reasonable amount of any settlement made to avoid the litigation, together with the costs of settlement. *Id.* The *Pulte Home* court observed that, in a contractual indemnity situation, the issue of whether indemnification covers only the amounts actually paid by the indemnity to a third party (plus costs), or includes unpaid parts of judgments as well, is governed by the scope of the

14

indemnity, i.e. whether it is an indemnity against only loss or damage, or an indemnity against liability. *Pulte Home*, 403 Md. at 386, 942 A.2d at 733. The court went on to review an earlier legal malpractice case, and the question of whether an action against a negligent attorney would accrue at the point at which a judgment is entered against the client due to the attorney's negligence, or only at the point that the client actually pays that judgment. *Pulte Home*, 403 Md. at 387, 942 A.2d at 734. The court took note of an "equally vexatious" problem arising from application of the prepayment rule: The question of when the statute of limitations begins to run. *Pulte Home*, 403 Md. at 388, 942 A.2d at 734. It found that, when indemnity or reimbursement is sought at the conclusion of an adversarial adjudicatory process in which the court has determined both liability and damages, the cause of action accrues when the judgment was entered. Accrual does not require that the judgment actually be paid, however. *Id*. The court also affirmed that, if a party enters into a good faith settlement with the third party in order to avoid the commencement or continuation of litigation, that party should be able to recover the cost of the settlement from the breaching party, even if the settlement amount is allowed to be paid over time, as long as the liability is legally enforceable against the party. *Pulte Home*, 403 Md. at 389, 942 A.2d at 734. The *Pulte Home* court did not reach the question of when an action for indemnification accrues if there is no adversarial adjudicatory process in which a court determines liability and damages.

Set forth in the chart that follows is a summary of the amount of Plaintiff's claims in Count II that are barred by the Statute of Limitations, depending on how the court interprets Maryland law with regard to accrual of an indemnification claim:

15

Count II – Indem. Agr. 03 Claims against both Mr. and Mrs. Cole

| | Measured by portion of Plaintiff's indemnification claim that accrued more than 3 years before Plaintiff knew or reasonably should have known this claim had been asserted by third parties against the underlying bond(s) | Measured by portion of Plaintiff's indemnification claim that accrued more than 3 years before Plaintiff had investigated such claims sufficiently to know that they were meritorious and likely to make Plaintiff responsible for payment of the underlying bond claims | Measured by portion of Plaintiff's indemnification claim that accrued more than 3 years before Plaintiff was adjudged liable for paying the underlying third party bond claims, or more than 3 years before Plaintiff actually paid such claim |
|---|---|---|---|
| For Guardian Group claim against Bond No. 893560S | $15,556.26 | $15,556.26 | $10,169.69 |
| For Dirt Plus claim against Bond No. 893560S | $56,746.22 | $56,746.22 | $50,996.22 |
| For Boyd & Dowgiallo claim against Bond No. 893560S | $11,626.55 | $11,626.55 | $5,044.05 |
| BG&E due to alleged default on obligations secured by Performance Bond No. 893560S | $5,539.00 | $5,539.00 | $5,539.00 |
| **Amt. of total claim in Count II (which is $89,468.03) that is barred by Statute of Limitations** | **$89,468.03** | **$89,468.03** | **$71,748.96** |

**V.   Summary judgment should be entered in favor of Mr. Cole on Count I to the extent claimed damages exceed $87,955.19, as damages in excess of this amount are barred by the statute of limitations.**

Many of the claims asserted by Plaintiff in Count I (arising under Indem. Agr. 01, and against Mr. Cole, but not Mrs. Cole) are also barred by the statute of limitations:

A.   Indemnification claim for amounts paid due to alleged default on obligations secured by Bond No. 890955S is barred by the statute of limitations.

Howard County, Maryland Developer Agreement Performance Bond No. 890955S, in the penal sum of $398,300.00, named Brantwood as principal, and Howard County, Maryland, as obligee, and guaranteed the performance of Brantwood's completion of certain public infrastructure in the Brantwood Section Three subdivision. *Pl's Memo in Support of Motion for Default Jgmt. (Doc. 36-1)(Exh. E hereto), ¶ 13(d); Aff. of J. Graham (Doc. 36-2)(Exh. F hereto), ¶ 11(d)*. In or around March 2012, Howard County declared Brantwood in default of its obligations secured by this bond, and demanded that Plaintiff complete the subdivision. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 16; Aff. of J. Graham, ¶ 14*. On June 14, 2012, Plaintiff sent letters to Brantly, Mr. Cole, and Mr. Liparini, informing them that Plaintiff had investigated the claim and concluded that the claim is covered by the bond. *Exh. C*. In response to Howard County's demand, Plaintiff contracted with Griffith Brothers, Inc. to complete Brantwood's scope of work, and paid Griffith Brothers, Inc. $26,250.00 to do so. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 17; Aff. of J. Graham, ¶¶ 15, 18*. Attached to the Affidavit of J. Graham (and hereto) as Exhibit L are checks and payment receipts showing this $26,250.00 amount was paid by Plaintiff to Griffith Brothers, Inc., and Plaintiff affirmed in deposition that these payment records are accurate. *Dep. of Plaintiff, p. 23, and Exh. 49 thereto*.

Plaintiff also allegedly incurred $7,917.07 in consultant fees to investigate this demand from Howard County, and to supervise Plaintiff's contract with Griffith Brothers, Inc. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 18; Aff. of J. Graham, ¶¶ 16, 19.* Plaintiff further claims indemnification for $278.00 in road notification and titling services arising from bond claim. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 19; Aff. of J. Graham, ¶¶ 17, 19.* Attached to the Affidavit of J. Graham (and hereto) as Exhibit M is a spreadsheet submitted by Plaintiff to show its payments on this bond obligation. Id.

Since Plaintiff knew, by March 2012, that Howard County had declared Brantwood in default of its obligations secured by this bond, *Pl's Memo in Support of Motion for Default Jgmt., ¶ 16; Aff. of J. Graham, ¶ 14,* and this was more than three years prior to Plaintiff filing suit, Plaintiff's claim for indemnification of the above total amount of $34,445.07 against Mr. Cole in Count I is barred by the statute of limitations.

B. <u>Indemnification claim for amounts paid due to alleged default on obligations secured by Bond No. 891425S is barred by the statute of limitations.</u>

Howard County, Maryland Developer Agreement Performance Bond No. 891425S, in the penal sum of $515,250.00, named Brantwood as principal, and Howard County, Maryland, as obligee, and guaranteed the performance of Brantwood's completion of roads, storm drains, storm water management facilities, and landscaping in the Brantwood Section Three subdivision. *Pl's Memo in Support of Motion for Default Jgmt. (Doc. 36-1), ¶ 13(f); Aff. of J. Graham (Doc. 36-2), ¶ 11(f).* In or around October 2011, Plaintiff received a payment bond claim from LDE, Inc., claiming it was owed $35,123.20 by Brantwood for services provided for the Brantwood Section Three subdivision. *Pl's Memo in Support of Motion for Default Jgmt., ¶ 22; Aff. of J. Graham, ¶23.* On October 21, 2011, Plaintiff sent

Brantwood the notice of this claim that is attached hereto as Exhibit S.  In or around December 2011, Plaintiff received a payment bond claim from Gradeline Construction Company, Inc., claiming it was owed $24,99292 by Brantwood for services provided for the same subdivision.  *Pl's Memo in Support of Motion for Default Jgmt., ¶ 23; Aff. of J. Graham, ¶24.*  On December 19, 2011, Plaintiff sent Brantwood the notice of this claim that is attached hereto as Exhibit T.  In January 2012, Plaintiff paid LDE, Inc. and Gradeline Construction Company, Inc. the full amount of these claims.  *Pl's Memo in Support of Motion for Default Jgmt., ¶ 24; Aff. of J. Graham, ¶¶ 25-26.*  Attached to the Affidavit of J. Graham (and hereto) as Exhibit O are checks and payment receipts showing this $60,116.12 amount was paid by Plaintiff by January 2012 (more than three years before filing of the lawsuit), and Plaintiff affirmed in deposition that these payment records are accurate. *Dep. of Plaintiff, pp. 33-36, and Exhs. 53-54 thereto.*

Since Plaintiff fully investigated the claims of LDE, Inc. and Gradeline Construction Company, Inc. by December 2011, and made payment in full on these claims by January 2012, and as this was more than three years prior to Plaintiff filing suit, Plaintiff's claim in Count I for indemnification of the above total amount of $60,116.12 from Mr. Cole is barred by the statute of limitations.

C.  Indemnification claims for amounts paid due to alleged default on obligations secured by Bond Nos. 890176S and 890955S are barred by the statute of limitations.

Howard County, Maryland Developer Agreement Performance Bond No. 890175S, in the penal sum of $88,863.00, named Marshalee as principal, and Howard County, Maryland, as obligee, and guaranteed the performance of Marshalee's completion of certain water and sewer facilities in the Marshalee Woods Section Two subdivision.  *Pl's Memo in Support of*

*Motion for Default Jgmt. (Doc. 36-1), ¶ 13(a); Aff. of J. Graham (Doc. 36-2), ¶ 11(a).*

Howard County, Maryland Developer Agreement Performance Bond No. 890955S, in the penal sum of $398,300.00, named Brantwood as principal, and Howard County, Maryland, as obligee and guaranteed the performance of Brantwood's completion of certain public infrastructure associated with the Brantwood Section Three subdivision. *Pl's Memo in Support of Motion for Default Jgmt. (Doc. 36-1), ¶ 13(d); Aff. of J. Graham (Doc. 36-2), ¶ 11(d).* In or around March 2011, Plaintiff was served with process in a lawsuit brought by Hatfield's Equipment & Dedication Services, Inc. ("Hatfield's") in the District Court of Maryland. Plaintiff alleges that it incurred attorneys' fees of $6,592.81 to be represented by counsel in this litigation, and that Plaintiff incurred losses of $23,826.22 to resolve the litigation. *Pl's Memo in Support of Motion for Default Jgmt., ¶¶ 32-33; Aff. of J. Graham, ¶¶ 35-36, 38.* Plaintiff was aware of Hatfield's claims by December 30, 2009, however, as shown by the letter of that date that is attached hereto as Exhibit D. This letter was sent by Plaintiff more than three years before the filing of the lawsuit. *Dep. of Plaintiff, pp. 55-58, and Exh. 69 thereto.* Plaintiff sent it to Brantly, Mr. Cole, and Mr. Liparini, in February 2010. *Exh. R.* Since Plaintiff was not only aware of these claims by early 2010, but also fully litigated and satisfied the claims of Hatfield's by January 2012 (more than three years prior to Plaintiff filing suit), Plaintiff's claim in Count I for indemnification of the above total amount of $30,410.03 against Mr. Cole is barred by the statute of limitations.

D. Attorneys' Fees.

Plaintiff seeks indemnification of $21,960.61 in attorneys' fees expended by Plaintiff as of the date of filing its Motion for Entry of Default Judgment (Doc. 36). *Pl's Memo in Support of Motion for Default Jgmt., ¶ 35; Aff. of J. Graham, ¶ 30; Aff. of S. Briglia, ¶ 10.*

$6,592.81 of these fees were expended more than three years before filing of the present action, however, *Aff. of S. Briglia, ¶ 9*, and therefore may not be recovered from Mr. or Mrs. Cole.

E.   The amount of Plaintiff's Count I claim barred by limitations depends upon when Plaintiff's indemnification claim accrued, and when the limitations period began to run.

Set forth in the chart that follows is a summary of the amount of Plaintiff's claims in Count I that are barred by the Statute of Limitations, depending on how the court interprets Maryland law with regard to accrual of an indemnification claim:

Count I – Indem. Agr. 01 Claims Mr. Cole (there is no claim asserted against Mrs. Cole in Count I)

| | Measured by portion of Plaintiff's indemnification claim that accrued more than 3 years before Plaintiff knew or reasonably should have known this claim had been asserted by third parties against the underlying bond(s) | Measured by portion of Plaintiff's indemnification claim that accrued more than 3 years before Plaintiff had investigated such claims sufficiently to know that they were meritorious and likely to make Plaintiff responsible for payment of the underlying bond claims | Measured by portion of Plaintiff's indemnification claim that accrued more than 3 years before Plaintiff was adjudged liable for paying the underlying third party bond claims, or more than 3 years before Plaintiff actually paid such claim |
|---|---:|---:|---:|
| Bond No. 890955S | $34,445.07 | $34,445.07 | $0 |
| Bond No. 891425S | $60,116.12 | $60,116.12 | $60,116.12 |
| Bond Nos. 890176S and 890955S | $30,455.03 | $30,455.03 | $30,455.03 |
| Bond No. 890383S | $0 | $0 | $0 |
| Attorneys' Fees | $6,592.81 | $6,592.81 | $0 |
| **Amt. of total claim in Count I (which is $219,519.22) that is barred by Statute of Limitations** | **$131,609.03** | **$131,609.03** | **$90,571.15** |

In summary, of the $219,519.22 total claim asserted by Plaintiff against Mr. Cole in Count I, Plaintiff was on notice of bond claims and attorneys' fees supporting $131,564.03 of this amount more than three years prior to filing its Complaint in the present action on November 13, 2015. As such, summary judgment must be entered in favor of Mr. Cole on

Count I to the extent claimed damages on this count exceed $87,955.19,[10] as damages in excess of this amount are barred by the statute of limitations.

**VI.     Even if claims against Mrs. Cole were not barred by the Statute of Limitations, summary judgment should be granted in her favor because no signature of Mrs. Cole was notarized.**

Plaintiff asserts no claim against Mrs. Cole in Count I (which is based upon Indem. Agr. 01), and does not allege that Mrs. Cole is a signatory to that document. Plaintiff's claim against Mr. and Mrs. Cole in Count II, in the amount of $89,468.03, is based upon Indem. Agr. 03. Mrs. Cole denies the averment of her execution of Indem. Agr. 03, *Answer (Doc. 14), p. 7,* and denies that she executed the document. *Dep. of G. Cole, pp. 37-38, 75-76.* Whether Plaintiff can meet its burden of proving the authenticity of the purported signature of Mrs. Cole on Indem. Agr. 03 is a question of fact to be determined at trial, should Count II survive the present motion for summary judgment. Before reaching this question of fact, however, summary judgment should be granted in favor of Mrs. Cole because the Indemnity Agreements expressly require that "ALL SIGANTURES MUST BE ACKNOWLEDGED BY A NOTARY PUBLIC." *Exh. B, p. 8 (capitalization in original).* The notary public certification attached to Indem. Agr. 03 makes no mention of Mrs. Cole being present at the time of document's execution, nor did the notary public purport to notarize or certify any signature of Mrs. Cole. Attached hereto are declarations of Mr. Cole, Mrs. Cole, and John F. Liparini, affirming that Mrs. Cole was not present on January 6, 2004 when Mr. Cole and Mr. Liparini executed Indem. Agr. 03. *Decl. of H. Cole (Exh. K), ¶ 5; Decl. of G. Cole (Exh. H), ¶ 4; Decl. of J. Liparini (Exh. N), ¶ 4.* Neither Mr. Cole nor Mr. Liparini witnessed Mrs.

---

[10] $219,519.22 - $131,564.03 = $87,955.19

Cole execute Indem. Agr. 03, nor do they have knowledge of her doing so.  *Decl. of H. Cole,*
*¶ 6; Decl. of J. Liparini, ¶ 5.*  The notary public is certain that Mrs. Cole did not execute the
indemnity agreement in her presence, Decl. *of Maxen (Exh. Q), ¶¶ 7, 11*, and that she would
not have notarized a document that was signed outside of her presence.  *Decl. of Maxen, ¶
10.*  Plaintiff has brought forth no witness with personal knowledge of Mrs. Cole signing
Indem. Agr. 03.  Regardless of whether Plaintiff is able to meet its burden, at trial, of proving
that the purported signature of Mrs. Cole on Indem. Agr. 03 is authentic, it is uncontested
that her purported signature was not notarized.

Since the Indemnity Agreements expressly require that "ALL SIGANTURES MUST
BE ACKNOWLEDGED BY A NOTARY PUBLIC," *Exh. B, p. 8*, there is no allegation that
Mrs. Cole signed Indem. Agr. 01, and it is clear on the face of Indem. Agr. 03 that the
purported signature of Mrs. Cole on that document was not notarized, summary judgment
must be granted in favor of Mrs. Cole on all claims, even if the action is allowed to proceed
against Mr. Cole.

## VII.   Summary judgment should be granted in favor of Mr. and Mrs. Cole on Count III.

In Count III of its Complaint, Plaintiff asserts a claim for "exoneration," and seeks
judgment of $308,987.25 against all defendants, jointly and severally.  The common law
right of exoneration gives a court of equity jurisdiction the capacity to compel a principal to
exonerate its surety or a guarantor at the maturity of the subject debt, even if the surety has
not paid on that debt or been called upon by a creditor to pay any part of the debt.
*Georgetown Coll. v. Madden*, 505 F. Supp. 557, 593 (D. Md. 1980), *quoting* Sterns, § 11.38
at pp. 515-16.  Equity grants this right in order to avoid circuity of action, and to prevent

harm to the surety, since the principal is ultimately liable for the obligation. *Id.*  Count III does not articulate the basis for an exoneration claim against the Coles, however.

Plaintiff alleges that "pursuant to the terms of the Indemnity Agreements, the Defendants agreed to exonerate [Plaintiff] from and against any and all liability by reason of Developers having provided the Bonds." *Complaint, ¶ 37.*  Mrs. Cole didn't agree to do anything "pursuant to…Indemnity Agreements" that she did not sign, however.  While a question of fact exists as to whether the purported signature of Mrs. Cole on Indem. Agr. 03 is genuine, it is undisputed that Mrs. Cole did not sign Indem. Agr. 01.  Therefore, any claim for "exoneration" against Mrs. Cole must be limited to the $89,468.03 in damages claimed by Plaintiff under Indem. Agr. 3.  $219,519.22 of the aggregate damages claimed in the Complaint arise out of alleged breach of Indem. Agr. 01, which Plaintiff does not allege that Mrs. Cole executed. *Complaint, p. 10.*  Through the guise of Count III, Plaintiff attempts to increase the amount of its cognizable claim against Mrs. Cole from $89,468.03 to $308,987.25, even though Plaintiff alleges only that Mrs. Cole executed Indem. Agr. 03, and alleges only $89,468.03 in claimed damages from breach of this agreement. *Complaint, p. 11.*

More fundamentally, the Coles, as guarantors and not principals, may not be held liable to a surety under a common law action for exoneration.  Exoneration provides rights for a surety to act only against a principal. *Georgetown Coll.*, 505 F. Supp. at 593.  Even if a common law claim of exoneration were capable of being asserted against a guarantor (which it is not), the grounds stated in Count III expressly are based upon "the terms of the Indemnity Agreement." *Complaint, ¶ 37.*  The Coles are not principals on the obligation.

Finally, Maryland courts strictly construe statutes of limitation. *Murphy v. Merzbacher*, 346 Md. 525, 532, 697 A.2d 861 (1997). Even if a common law claim for exoneration could be asserted against guarantors such as the Coles, such a claim would run afoul of the same limitations issues addressed with regard to Counts I and II. If the court were to hold that the Indemnity Agreements were specialties subject to a twelve-year limitations period under Md. Cts. & Jud. Proc. Code § 5-102(a), the twelve-year limitations period nevertheless would not apply to the common law exoneration claim asserted in Count III. Under the clear language of the statute, the twelve-year limitations period applies only to "an action <u>on</u> one of the [specified] specialties." *Crowder v. Master Financial, Inc.*, 176 Md. App. 631, 933 A.2d 905 (2007) (emphasis added). In determining whether the statute applies to a contract claim, a two-step inquiry is required: (1) Is the contract a specialty? (2) Is the cause of action "on" the specialty? *The Wellington Company, Inc. v. Shakiba*, 180 Md. App. 576, 603, 952 A.2d 328, 344 (2008). The common law exoneration claim asserted in Count III is not an action brought "on" either of the Indemnity Agreements. (If it were, it would be redundant of the earlier counts). Therefore, a three-year limitations period must apply to the common law exoneration claim, and the limitations issues discussed earlier in this brief would thereby require summary judgment to be entered in favor of Mrs. Cole, and also in favor of Mr. Cole to the extent damages claims against him exceed $87,955.19.

VIII.   **Conclusion**.

Summary judgment must be granted in full in favor of Mrs. Cole, for a number of reasons. As discussed in Section VI of this Memorandum, Indem. Agr. 03 required that all signatures be notarized to be valid, and the purported signature of Mrs. Cole on that document is not notarized, so judgment must be entered in favor of Mrs. Cole on all claims.

26

As set forth in Section VII, since they are guarantors and not principals, the Coles may not be held liable to a surety under a common law action for exoneration, which provides rights for a surety to act only against a principal.  Summary judgment therefore must be entered in favor of both Mr. and Mrs. Cole on Count III.  Further, summary judgment must be entered in favor of Mr. and Mrs. Cole to the extent claims against them accrued more than three years before Plaintiff filed its Complaint on November 13, 2015.  This brings to the fore the knottiest issue confronting the court in this case: Whether the applicable limitations period begins: (1) when Plaintiff knew or reasonably should have known that particular claims had been asserted by third parties against the underlying bonds, or (2) when Plaintiff had investigated such claims sufficiently to know that there were meritorious and likely to make Plaintiff responsible for payment of particular bond claims, or (3) when Plaintiff was adjudged liable for paying particular third party bond claims, and/or actually paid such claims.  As set forth in the charts contained in Sections IV and V of this brief, under any of these interpretation of law substantial portions of Plaintiff's indemnification claims against the Coles are barred by the Statute of Limitations.  The only question is the amount of claims so barred.

Respectfully submitted,

DAVIS, AGNOR, RAPAPORT & SKALNY, LLC

/s/ Steven J. Lewicky

---

Steven J. Lewicky, Esq., Bar No. 07464
slewicky@darslaw.com

/s/ Megan R. O'Connor

---

Megan R. O'Connor, Esq., Bar No. 13685
moconnor@darslaw.com
(signed by Steven J. Lewicky with
permission of Megan R. O'Connor)
10211 Wincopin Circle, Suite 600
Columbia, Maryland  21044
410-995-5800 (Telephone)
410-309-6161 (Facsimile)
Attorneys for Defendants
Glen Hannah Cole and Hugh F. Cole, Jr.