**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **DEVELOPERS SURETY AND** | ) | |
| **INDEMNITY COMPANY** | ) | |
| | ) | **Civil Action No. 1:15-cv-3465** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BRANTLY DEVELOPMENT GROUP, INC.,** | ) | |
| *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT AGAINST**
**DEFENDANTS HUGH F. COLE, JR. AND GLEN HANNAH COLE**

# TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT ............................................................................................ 1

II.  INTRODUCTION AND PROCEDURAL BACKGROUND ............................................ 2

III. STATEMENT OF UNDISPUTED FACTS ...................................................................... 3

IV.  STANDARD OF REVIEW ............................................................................................... 17

V.   THE COLES' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ......... 18

    A.  It Cannot Be Disputed That Mrs. Cole's Signature Was Notarized .............................. 18

    B.  The Indemnity Agreements Are Instruments Under Seal Thus Extending The Statute ............... 23
        Of Limitations To Twelve Years

    C.  The Coles Are Jointly And Severally Liable For Developers' Losses .......................... 27

    D.  Mr. Cole's Acknowledgment Of The Debt To Developers Removes The Bar Of The ............... 28
        Statute Of Limitations To Him

    E.  Developers' Count III For Exoneration Properly Pleads an Alternative Theory of ...................... 29
        Relief To Developers' Counts I And II Of The Complaint

VI.  MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ............. 30
    - DEVELOPERS IS ENTITLED TO JUDGMENT AGAINST THE COLES AS A MATTER
    OF LAW

    A.  The Indemnity Agreements Are Binding And Enforceable And Developers' Losses Were ......... 31
        Reasonable

    B.  The Coles Are Also Liable For Developers' Attorneys' Fees ....................................... 34

VII. CONCLUSION .................................................................................................................. 35

# APPENDIX OF EXHIBITS

**EXHIBIT A:**    Indemnity Agreement No. 13522-01

**EXHIBIT B:**    Indemnity Agreement No. 13522-03

**EXHIBIT C:**    Deposition Transcript of Hugh F. Cole, Jr.

**EXHIBIT D:**    Deposition Transcript of Glen Hannah Cole

**EXHIBIT E:**    Defendant Hugh F. Cole, Jr.'s, Answers to Plaintiff's First Interrogatories

**EXHIBIT F:**    Brantly's 2006 Federal and State Tax Returns

**EXHIBIT G:**    Excerpts of Marshalee Woods Limited Partnership Agreement

**EXHIBIT H:**    Defendant Glen Hannah Cole's Answers to Plaintiff's First Interrogatories

**EXHIBIT I:**    Affidavit of Jef Graham

**EXHIBIT J:**    Marshalee Woods Performance Bond No. 890176S

**EXHIBIT K:**    Marshalee Woods Labor and Material Payment Bond No. 890176S

**EXHIBIT L:**    Brantwood Forest Conservation Agreement Performance Bond No. 890383S

**EXHIBIT M:**    Brantwood Performance Bond No. 890955S

**EXHIBIT N:**    Brantwood Labor and Material Payment Bond No. 890955S

**EXHIBIT O:**    Brantwood Performance Bond No. 891425S

**EXHIBIT P:**    Brantwood Labor and Material Payment Bond No. 891425S

**EXHIBIT Q:**    Bonnielass Performance Bond No. 893560S

**EXHIBIT R:**    Bonnielass Labor and Material Payment Bond No. 893560S

**EXHIBIT S:**    Email dated November 5, 2003

**EXHIBIT T:**    Email dated July 18, 2011

**EXHIBIT U:**    Letters dated June 14, 2012

**EXHIBIT V:**    Check in the amount of $278.00

**EXHIBIT W:**    Notice of Default dated December 12, 2012

**EXHIBIT X:**    Letter dated June 5, 2013

**EXHIBIT Y:**    Letter dated October 21, 2011

**EXHIBIT Z:**    Letter dated December 19, 2011

**EXHIBIT AA:**    Claim from Gradeline Construction Company, Inc.

**EXHIBIT BB:**    Email dated December 16, 2011

**EXHIBIT CC:**    Notice of Default dated March 28, 2011

**EXHIBIT DD:**    Payments to Dirt Plus, Inc.

**EXHIBIT EE:**    Payments to Boyd & Dowgiallo, P.A.

# APPENDIX OF EXHIBITS

**EXHIBIT FF:**    Email dated March 28, 2011

**EXHIBIT GG:**    Email dated July 12, 2011

**EXHIBIT HH:**    Hatfield's Complaint

**EXHIBIT II:**    Affidavit of Shannon J. Briglia, Esq.

**EXHIBIT JJ:**    Hatfield's Judgment Order

**EXHIBIT KK:**    Satisfaction of Hatfield's Judgment

**EXHIBIT LL:**    Letter dated February 8, 2010

**EXHIBIT MM:**    Settlement Agreement and Release between Developers and Hatfield's

**EXHIBIT NN:**    Compilation of Written Notices of Loss

**EXHIBIT OO:**    Indemnity Agreement No. 13522-02

**EXHIBIT PP:**    Email dated November 5, 2003

**EXHIBIT QQ:**    *Hampt v. Chernow*, 2013 WL 4176959 (D. Md. Aug. 13, 2013)

**EXHIBIT RR:**    *Westfield Ins. Co. v. Site Maintenance, Inc.*, 2013 WL 5964505 (D. Md. Nov. 6, 2013)

**EXHIBIT SS:**    *Hanover Ins. Co. v. Persaud Companies, Inc.*, WL 4496448 (D. Md. July 22, 2015)

COMES NOW Plaintiff Developers Surety and Indemnity Company ("Developers"), by counsel, pursuant to Fed.R.Civ.P. 56 and Local Rule 105, and states the following as its Memorandum in Support of its Opposition to Defendants Hugh F. Cole, Jr.'s and Glen Hannah Cole's (collectively, the "Coles") Motion for Summary Judgment and Memorandum in Support of Cross-Motion for Summary Judgment against the Coles.[1]

## I.    <u>SUMMARY OF ARGUMENT</u>

In reliance upon signed, sealed, and notarized indemnity agreements, Developers issued numerous subdivision bonds for projects in Maryland. Developers incurred losses on those bonds resulting from defaults in performance by the bond principals, failure of the bond principals to pay for services, materials and labor, and legal and consulting fees to respond to claims on the bonds. Mr. Cole concedes liability for some of Developers' losses[2] but challenges losses incurred more than three years prior to the filing of the Complaint. Mrs. Cole disputes liability contending that her signature on Indemnity Agreement No. 13522-03 was not notarized and/or that she is not liable for losses occurring more than three years prior to the filing of the Complaint. The Coles' attempts to avoid liability on the indemnity agreements must fail because: (1) Mrs. Cole signed Indemnity Agreement No. 13522-03 and her signature was properly and conclusively notarized by an authorized notary public; (2) the indemnity agreements are documents under seal, subject to a twelve year statute of limitation; (3) Developers' losses all accrued within the applicable statute of limitation; and (4) the losses incurred by Developers are presumptively reasonable and recoverable. For the reasons stated

---

[1] On July 22, 2016, the Coles filed their Motion for Summary Judgment. *See* Doc. No. 40. Accordingly, and pursuant to Fed.R.Civ.P. 56 and this Court's Local Rule 105, as set forth in more detail below, the Coles' Motion for Summary Judgment should be denied, and Developers' Cross-Motion for Summary Judgment be granted against the Coles.

[2] Mr. Cole only challenges Developers' damages that accrued more than three years prior to the filing of the suit.

below, Developers requests that Defendants' motion for summary judgment be denied and that Developers' cross-motion for summary judgment be granted.

## II.     INTRODUCTION AND PROCEDURAL BACKGROUND

This case is an indemnity suit in which Developers seeks to enforce its right to recover losses, costs, and expenses in connection with having issued several surety bonds. On November 13, 2015, Developers filed its Complaint seeking damages, jointly and severally, against the Defendants arising out of two indemnity agreements (the "Indemnity Agreements").[3] Copies of the Indemnity Agreements are attached hereto as Exhibits A and B.[4] Under the terms of the Indemnity Agreements, the Coles specifically agreed to, *inter alia*, indemnify and hold Developers harmless from and against any and all liability, loss, claims, demands, costs, damages, and attorneys' fees and expenses, together with interest thereon, which Developers may sustain or incur by reason of or in consequence of having delivered bonds to Brantly, Marshalee, Brantwood, and Bonnielass.

Developers received claims and demands upon its bonds issued for Brantly, Marshalee, Brantwood, and Bonnielass. As a result of those claims and demands, Developers has incurred losses of $308,987.25 to respond to the claims and demands on its bonds, and procure the release of its bonds, for which the Coles are jointly and severally liable to Developers. Developers has also incurred losses as the result of outstanding premiums that are owed on Developers bonds.

---

[3] Developers' Complaint seeks damages against Defendants Brantly Development Group, Inc. ("Brantly"), Marshalee Woods Limited Partnership ("Marshalee"), Brantwood, LLC ("Brantwood"), and Hugh F. Cole, Jr. for Breach of Contract – Indemnity Agreement No. 13522-01 (Count I); Defendants Brantly, Bonnielass, LLC ("Bonnielass"), Hugh F. Cole, Jr., and Glen Hannah Cole for Breach of Contract – Indemnity Agreement No. 13522-03 (Count II); and against all Defendants for Exoneration (Count III). On June 27, 2016, this Court entered default judgment against Defendants Brantly, Marshalee, Brantwood, and Bonnielass, jointly and severally, in the amount of $308,987.25, plus attorneys' fees in the amount of $21,960.61, interest at the legal rate of six percent (6%) from February 17, 2011, post-judgment interest, and any post-judgment collection costs. *See* Order dated June 27, 2016 (Doc. No. 39).
[4] The terms of the Indemnity Agreements are substantively identical.

Developers has also incurred attorneys' fees and expenses of $40,347.87, for which the Coles are also jointly and severally liable to Developers.

## III. STATEMENT OF UNDISPUTED FACTS

Set forth below are the undisputed facts relevant to this Opposition and Cross-Motion:

### The Parties

1.     Developers is a national surety company engaged in the business of construction and surety bonding. *See* Complaint, ¶ 1; *see also* Answer of Defendant Hugh F. Cole, Jr. (hereinafter "Mr. Cole's Answer"), ¶ 1; Answer of Defendant Glen Hannah Cole (hereinafter "Mrs. Cole's Answer"), ¶ 1.

2.     The Coles are husband and wife, and citizens of the State of Maryland. *See* Complaint, ¶¶ 6-7; Mr. Cole's Answer, ¶ 6; Mrs. Cole's Answer, ¶ 7; *see also* Exhibit C (Mr. Cole's Deposition Testimony (hereinafter "Mr. Cole's Dep.")), 72:8-10[5]; Exhibit D (Mrs. Cole's Deposition Testimony (hereinafter "Mrs. Cole's Dep.")), 39:5-7.

3.     Mr. Cole is the co-owner of Brantly, and the co-owner and member of Brantwood, Marshalee Woods, and Bonnielass. *See* Exhibit E (Mr. Cole's Answers to Interrogatories), Nos. 3 and 4 (verifying Mr. Cole's corporate ownership interest).

4.     Mrs. Cole is or was the Vice President of Brantly. *See* Exhibit F (Brantly's 2006 federal and state tax returns signed by Mrs. Cole as Vice President of Brantly); Exhibit D (Mrs. Cole's Dep.), 24:11–27:16 and 31:6–34:21 (attesting that Mrs. Cole was the Vice President of Brantly).

5.     Collectively, the Coles own or owned twenty-two percent (22%) of Marshalee Woods. *See* Exhibit C (Mr. Cole's Dep.), 33:9 – 36:7; Exhibit G (excerpts of Marshalee Woods Limited Partnership Agreement); Exhibit D (Mrs. Cole's Dep.), 53:10–54:10.

---

[5] All pinpoint cites to deposition transcripts are referenced as "page number: line(s)."

**Developers' Bonds For Brantly, Brantwood, Marshalee, And Bonnielass**

6.      Beginning in or around 1998, Brantly requested that Developers issue subdivision surety bonds for several projects that Brantly, Marshalee, Brantwood, and Bonnielass were to construct in Maryland. *See* Complaint, ¶ 11; *see also* Mr. Cole's Answer, ¶ 11; Mrs. Cole's Answer, ¶ 11.

7.      Mrs. Cole was involved in the procurement of Developers' bonds for those projects. *See* Exhibit H (Mrs. Cole's Answers to Interrogatories), No. 11; *see also* Exhibit D (Mrs. Cole's Dep.), 12:22–13:15 (attesting that Mrs. Cole "helped with getting the bonds for developers agreements."), 22:9–23:11 (attesting that Mrs. Cole was responsible for obtaining bonds for the Bonnielass subdivision and submitting those bonds to Howard County), and 62:15-22 (attesting that Mrs. Cole received the Bonnielass bond and hand-delivered it to Howard County).

8.      Specifically, Developers issued the following subdivision surety bonds (the "Bonds") at the request of Brantly, Marshalee, Brantwood, and Bonnielass:

    a.   Marshalee Performance Bond No. 890176S in the penal sum of $88,863.00;
    b.   Marshalee Labor and Material Payment Bond No. 890176S in the penal sum of $44,431.50;
    c.   Brantwood Forest Conservation Agreement Performance Bond No. 890383S in the penal sum of $94,532.00;
    d.   Brantwood Performance Bond No. 890955S in the penal sum of $398,300.00;
    e.   Brantwood Labor and Material Payment Bond No. 890955S in the penal sum of $199,150.00;
    f.   Brantwood Performance Bond No. 891425S in the penal sum of $515,250.00;
    g.   Brantwood Labor and Material Payment Bond No. 891425S in the penal sum of $257,625;
    h.   Bonnielass Performance Bond No. 893560S in the penal sum of $108,480.00; and
    i.   Bonnielass Labor and Material Payment Bond No. 893560S in the penal sum of $54,240.00.

*See* Complaint, ¶ 16; *see also* Exhibit I (Affidavit of Jef Graham) (herein after "Graham Aff."),

¶¶ 4-5; Exhibit C (Mr. Cole's Dep.), 148:20–150:1; 114:5-13; 128:19–130:5; 157:17–158:22;

172:8–173:11 (attesting to the veracity of the Bonds issued for Brantly, Marshalee, Brantwood,

and Bonnielass; Exhibits J-R (the Bonds).

9.  Developers incurred losses with respect to each of the Bonds, and seeks to recover

from those losses. *See* Complaint, ¶¶ 18-20; *see also* Exhibit I (Graham Aff.), ¶ 10.

## The Indemnity Agreements

10.  In order to induce Developers to issue the Bonds, the Coles, and others, executed

and delivered to Developers the Indemnity Agreements, binding themselves to be jointly and

severally liable to Developers in the event of any loss on any of the Bonds issued by Developers.

*See* Exhibits A and B (Indemnity Agreements), p. 1 (stating that "Principal and each separate

Indemnitor, jointly and severally, agree as follows"); *see also* Complaint, ¶ 12; Mr. Cole's

Answer, ¶ 12; Mrs. Cole's Answer, ¶ 12.

11.  There is no dispute that Mr. Cole executed Indemnity Agreement No. 13522-01.

*See* Exhibit E (Mr. Cole's Answers to Interrogatories), Nos. 8 and 9 (verifying that Mr. Cole

executed the Indemnity Agreements).

12.  The Coles' dispute that Mrs. Cole executed Indemnity Agreement No. 13522-03.

*See generally* the Coles' Motion for Summary Judgment.

13.  The signature page for Indemnity Agreement No. 13522-03 includes Mrs. Cole's

signature, and beneath her signature the words: "(wife), individually." The notarial page for

Indemnity Agreement No. 13422-03 identifies the individuals who "personally appeared" before

the notary for signing that indemnity agreement, and includes "John F. Liparini; Hugh F. Cole,

Jr.; (wife)." *See* Exhibit B (Indemnity Agreement No. 13522-03), p. 20-21.

14. Mrs. Cole agreed to sign Indemnity Agreement No. 13522-03. *See* Exhibit S (November 5, 2003 email from Mrs. Cole to Cathy Warren)[6]; Exhibit D (Mrs. Cole's Dep.), 27:17-19 and 28:19–29:8 (attesting that Mrs. Cole has no reason to dispute that she wrote the November 5, 2003 email), 49:14 – 50:8 (attesting that Mrs. Cole's November 5, 2003 email was exactly one day prior to the date on Indemnity Agreement No. 13522-03), and 36:4–39:1 (attesting that Mrs. Cole has "[n]o facts" to support that someone else signed her name or transferred her name to Indemnity Agreement No. 13522-03).

15. The signatures and resolutions attached to and incorporated within the Indemnity Agreements ratifying the indemnity were all made "under seal." *See* Exhibit A (Indemnity Agreement No. 13522-01), p. 12 (stating that the Resolution Ratifying Indemnity is "[g]iven under my hand the seal of the Company" and includes a reference to "(Seal)," following the endorsement on that Resolution Ratifying Indemnity); *see also* Exhibit B (Indemnity Agreement No. 13522-03), p. 22 (stating that the Resolution Ratifying Indemnity is "[g]iven under my hand the seal of the Company").

16. On Indemnity Agreement No. 13522-01, Brantly signed that indemnity agreement and included the term "(Seal)" following each of its signatures. *See* Exhibit A (Indemnity Agreement No. 13522-01), p. 9.

17. The Resolution Ratifying Indemnity within Indemnity Agreement No. 13522-03 identifies that Brantly is the parent of, or otherwise affiliated with, Bonnielass. *See* Exhibit B (Indemnity Agreement No. 13522-03), p. 22.

18. Brantly is also an indemnitor to Indemnity Agreement No. 13522-03. *See* Exhibit B (Indemnity Agreement No. 13522-03), p. 20.

---

[6] Cathy Warren is Developers' bonding agent. *See* Exhibit D (Mrs. Cole's Dep.), 22:2-7.

19.     The handwriting on the Resolution Ratifying Indemnity on Indemnity Agreement No. 13522-03 is that of Mrs. Cole. *See* Exhibit D (Mrs. Cole's Dep.), 83:22–84:13 (attesting that Mrs. Cole recognizes the handwriting and that it is probably her handwriting).

20.     The notarial statement in the original version of Indemnity Agreement No. 13522-03 includes a raised or embossed notarial seal, which is indiscernible on any photocopied versions of that indemnity agreement. *See* Exhibit C (Mr. Cole's Dep.), 77:9-22; *see also* Exhibit D (Mrs. Cole's Dep.), 36:4–37:13 (attesting that Susan Maxen's notarial seal is raised on the original Indemnity Agreement No. 13522-03) and 40:5-9 (attesting that Mrs. Cole has no reason to doubt Ms. Maxen's notary stamp).

21.     Under the terms of the Indemnity Agreement, the Coles, jointly and severally agreed to make Developers whole for any losses it suffered. The Coles specifically agreed to:

> Indemnify and hold harmless [Developers] from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which [Developers] may sustain or incur by reason of or in consequence of the execution and delivery by [Developers] of any Bond on behalf of Principal… including, without limitation, the following:
>
> 1.1     To pay to Surety an initial premium upon the execution of each Bond […] To also pay all renewals, extensions and premium adjustments billed by Surety until satisfactory evidence of discharge of release shall be furnished to Surety.
>
> 1.2     Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to Principal's nonperformance of an Obligation or any other matter covered by a Bond.
>
> 1.3     Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation or a Bond, including, without limitation, attorneys' fees and all legal expenses, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.
>
> 1.4     Liability incurred or expenses paid in procuring or attempting to procure a release of liability under or exoneration of a Bond.

1.5 Liability incurred or expenses paid in recovering or attempting to recover losses or expenses paid or incurred in connection with this Agreement, an Obligation or a Bond.

*See* Exhibits A and B (Indemnity Agreements), ¶ 1; *see also* Complaint, ¶ 13; Mr. Cole's Answer, ¶ 13; Mrs. Cole's Answer, ¶ 13.

22. The Indemnity Agreements also grant Developers sole and unilateral decision-making authority with respect to negotiating or paying any claims made against Developers' Bonds and provide for Developers to recover its attorneys' fees:

2.1 [Developers] shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.

2.2 [Developers] shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to, expenses for investigative, accounting, engineering and legal services.
[…]
2.5 [Developers] shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by [Developers]. In any suit on this Agreement, [Developers] may recover its further expenses and reasonable attorneys' fees incurred in such suit.

*See* Exhibits A and B (Indemnity Agreements), ¶ 2; *see also* Complaint, ¶ 14; Mr. Cole's, ¶ 14; Mrs. Cole's Answer, ¶ 14.

23. The Coles also expressly agreed that if Developers sought to recoup and recover its losses, all Developers must provide in terms of prima facie evidence of its losses is a sworn itemized statement of claims or losses paid or liabilities incurred:

In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of [Developers], or the vouchers or other evidence of disbursement by [Developers], shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor.

*See* Exhibits A and B (Indemnity Agreements), ¶ 2.4.

24.     The Coles also agreed that they would be in default of the Indemnity Agreements

upon the occurrence of any of the following:

5.1     Any default in the performance of an Obligation by Principal or any declaration
        by any obligee of an Obligation that Principal is in default thereunder.

5.2     The breach of this Agreement by Principal or Indemnitor.

5.3     In the event that the Obligation, or any portion thereof, relates to development of
        real property or construction of improvements upon real property: (i) the failure of
        Principal to pay for labor and materials ordered for or used in connection with
        such development or construction improvements; (ii) the diversion or non-use by
        Principal of loan funds, equity funds or materials intended by the lender, equity
        contributor or supplier of such funds or materials to be used and which are needed
        to perform or discharge a specific Obligation; or (iii) the voluntary or involuntary
        cessation or suspension of work required to be performed by Principal in
        connection with the Obligation.

*See* Exhibits A and B (Indemnity Agreements), ¶ 5; *see also* Complaint, ¶ 15; Mr. Cole's

Answer, ¶ 15; Mrs. Cole's Answer, ¶ 15.

25.     The Coles also agreed that their obligations under the Indemnity Agreements

were joint and several with the other principals and indemnitors: "[t]he obligations of Principal

and Indemnitor hereunder are joint and several [...]. *See* Exhibits A and B (Indemnity

Agreements), ¶ 14.1.

**<u>Developers' Losses On Bond No. 890955S</u>**

26.     In or around March 2012, Howard County declared Brantwood in default of its

obligations to install and complete all improvements at the Brantwood subdivision in accordance

with Brantwood's agreement with Howard County, and made a demand upon Developers to

complete the Brantwood subdivision. *See* Exhibit I (Graham Aff.), ¶¶ 11-12; *see also* Exhibit C

(Mr. Cole's Dep.), 141:18–142:8 (attesting that Mr. Cole has no reason to dispute that

Brantwood was unable to complete the Brantwood subdivision); Exhibit T (July 18, 2011 email

from Nick Liparini to Mitch Petras stating that "Brantwood LLC is unable to complete

performance on [the Brantwood Section Three Area One and the Brantwood Section Three Area Three projects]").[7]

27.    As a result of the County's demand, Developers entered into a Completion Contract with Griffith Brothers, Inc. to complete Brantwood's scope of work on the Brantwood subdivision. Developers paid Griffith Brothers, Inc. $26,250.00 to complete that work. *See* Exhibit I (Graham Aff.), ¶¶ 11-14; *see also* Exhibit C (Mr. Cole's Dep.), 141:7-142:8 (attesting that Brantwood was unable to complete the scope of work on the Brantwood Section Three residential subdivision) and 144:1–146:20 (attesting that Mr. Cole has no facts to support that the amounts invoices by Griffith Brothers, Inc. were unreasonable); Exhibit T (July 18, 2011 email); Exhibit U (June 14, 2012 letter from Developers to Mr. Cole identifying the cost for completing the bonded work).

28.    As a result of the County's demand, Developers also incurred $7,917.07 in consultant fees to investigate the demand by Howard County, and to supervise Developers' completion contract with Griffith Brothers, Inc. *See* Exhibit I (Graham Aff.), ¶ 15; *see also* Exhibit C (Mr. Cole's Dep.), 146:21–148:3 (attesting that Mr. Cole has no facts to support that the amounts Developers incurred in consultant fees were unreasonable).

29.    Developers also incurred $278.00 in costs to Howard County for road notification and titling services required for the completion of the Brantwood subdivision. *See* Exhibit I (Graham Aff.), ¶¶ 16-17; *see also* Exhibit C (Mr. Cole's Dep.), 148:4-17 (attesting that Mr. Cole does not dispute the amount of $278.00 which Developers incurred in costs to Howard County); Exhibit V (check in the amount of $278.00).

---

[7] Nick Liparini was employed by Brantwood and was possibly a member of Bonnielass. *See* Exhibit C (Mr. Cole's Dep.), 49:6-16 and 40:15-18.

## Developers' Losses On Bond No. 890383S

30.     In or around December 2012, Howard County declared Brantwood in default of its forest conservation obligations secured by Bond No. 890383S, and made a claim against Bond No. 890383S, claiming that Brantwood failed to complete and maintain the forest restoration work at the Brantwood subdivision. *See* Exhibit I (Graham Aff.), ¶¶ 18-19; *see also* Exhibit C (Mr. Cole's Dep.), 118:4-16 (attesting that Mr. Cole was apprised of the notice of default from the County); Exhibit W (December 12, 2012 Howard County notice of default).

31.     Developers investigated Howard County's demand, and upon conclusion of its investigation, agreed to and tendered payment in the amount of $94,532.00, as the full penal sum of Bond No. 890383S to Howard County. *See* Exhibit I (Graham Aff.), ¶¶ 20-22; *see also* Exhibit C (Mr. Cole's Dep.), 123:8–126:9 (attesting that Mr. Cole has no reason to dispute that Developers tendered the penal sum of Bond No. 890383S to Howard County) and 127:22–128:3 (attesting that Mr. Cole has no facts to support that the amount of $94,532.00 was unreasonable); Exhibit X (June 5, 2013 letter from Howard County acknowledging receipt of Developers' check in the amount of $94,532.00).

## Developers' Losses On Bond No. 891425S

32.     In or around October 2011, Developers received a payment bond claim from LDE, Inc., claiming it was owed $35,123.20 by Brantwood for engineering, design, surveying services, and as-builts that LDE, Inc. supplied to Brantwood for the Brantwood subdivision. *See* Exhibit I (Graham Aff.), ¶¶ 23-24; *see also* Exhibit C (Mr. Cole's Dep.), 160:4-12 (attesting that Mr. Cole has no reason to dispute that the amount of $35,123.20 was owed to LDE, Inc.) and 164:9–165:1 (attesting that Mr. Cole has no facts to support that the amount Developers paid to LDE, Inc. was unreasonable); Exhibit Y (October 21, 2011 letter enclosing the claim from LDE).

33.     Additionally, in or around December 2011, Developers received a payment bond claim from Gradeline Construction Company, Inc., claiming it was owed $24,999.92 by Brantwood for dedication and punch list services that Gradeline Construction Company, Inc. provided to the Brantwood subdivision. *See* Exhibit I (Graham Aff.), ¶¶ 25-28; *see also* Exhibit C (Mr. Cole's Dep.), 167:8-11 (attesting that neither Brantly nor Brantwood paid Gradeline Construction Company, Inc.), 167:18-20 (attesting that Mr. Cole does not dispute the amount of $24,999.92 that was claimed due by Gradeline Construction Company, Inc.), 168:12-15 (attesting that there is no dispute to the claim by Gradeline Construction Company, Inc.), and 171:3-15 (attesting that Mr. Cole is responsible to reimburse Developers for the amounts that Developers paid to Gradeline Construction Company, Inc. to satisfy the payment bond claim in the amount of $24,999.92); Exhibit Z (December 19, 2011 letter from Developers to Mr. Cole advising of the claim from Gradeline Construction Company); Exhibit AA (Claim from Gradeline Construction Company, Inc.); Exhibit BB (December 16, 2011 email from Nick Liparini stating there is no dispute to the claim from Gradeline Construction Company, Inc.).

34.     Developers investigated the claims made by LDE, Inc. and Gradeline Construction Company, Inc. and finding those claims to be valid, paid the full amount of those claims, causing Developers to incur a total loss of $60,123.12 on Bond No. 891425S. *See* Exhibit I (Graham Aff.), ¶¶ 29-31.

### Developers' Losses On Bond No. 893560S

35.     In March 2011, Howard County declared Bonnielass in default of its obligations secured by Bond No. 893560S, and demanded that Developers forfeit the entire penal sum of Bond No. 893560 in the amount of $108,480.00 to the County. *See* Exhibit I (Graham Aff.), ¶¶ 32-33; *see also* Exhibit C (Mr. Cole's Dep.), 180:21–181:2 and 181:19-22 (attesting that

Bonnielass was not able to complete the bonded obligations); Exhibit D (Mrs. Cole's Dep.), 68:8-19 (attesting that Mrs. Cole has no reason to doubt that Bonnielass was not able to complete the subdivision); Exhibit CC (March 28, 2011 notice of default from Howard County).

36.     In response to Howard County's declaration of default and demand, Developers retained a construction consultant, the Guardian Group, Inc., to investigate Bonnielass' default and the demand by Howard County. Following the completion of its investigation, Developers determined that Howard County's default was valid, and instructed the Guardian Group, Inc. to oversee the completion of the work at the Bonnielass subdivision, in order to secure the release of Bond No. 893560S.  In total, Developers paid the Guardian Group, Inc. $16,096.97 for its work in support of the completion of the Bonnielass subdivision and the release of Bond No. 893560S. *See* Exhibit I (Graham Aff.), ¶¶ 35-36; *see also* Exhibit C (Mr. Cole's Dep.), 182:1-4 (attesting that Mr. Cole was aware that Developers completed the bonded work at the Bonnielass subdivision) and 184:19–185:2 (attesting that Mr. Cole has no facts to dispute the costs that Developers incurred to retain the Guardian Group, Inc. for its work in support of the completion of the Bonnielass subdivision and the release of Bond No. 893560S); Exhibit D (Mrs. Cole's Dep.), 69:15–70:5 (attesting that Mrs. Cole has no reason to dispute the costs that Developers paid to the Guardian Group, Inc.).

37.     In order to satisfy Howard County's demand and secure the release of Bond No. 893560S, Developers also retained Dirt Plus, Inc. to complete the work at the Bonnielass subdivision, including the relocation of a telephone pole, furnishing and placing topsoil, and stabilization work. Developers paid Dirt Plus, Inc. $56,746.22 for its work to complete the Bonnielass subdivision.  *See* Exhibit I (Graham Aff.), ¶¶ 37-38; *see also* Exhibit C (Mr. Cole's Dep.), 182:13-21 (attesting that Mr. Cole does not have any facts to dispute the amounts that

Developers paid to Dirt Plus, Inc. to complete the work at the Bonnielass subdivision); Exhibit D (Mrs. Cole's Dep.), 68:20–69:14 (attesting that Mrs. Cole has no reasons to dispute the costs Developers paid to Dirt Plus, Inc. to complete the work at the Bonnielass subdivision); Exhibit DD (Developers' payments to Dirt Plus, Inc.).

38.     Developers also retained Boyd & Dowgiallo, PA, to perform professional engineering services in support of the completion of the Bonnielass subdivision. Developers paid Boyd & Dowgiallo, P.A. $11,626.55 for those professional engineering services. *See* Exhibit I (Graham Aff.), ¶¶ 39-40; *see also* Exhibit C (Mr. Cole's Dep.), 185:3-15 (attesting that Mr. Cole has no reason to dispute the amounts that Developers paid to Boyd & Dowgiallo, P.A. for its engineering services and attesting that Mr. Cole is responsible to indemnify Developers for those costs); Exhibit EE (Developers' payments to Boyd & Dowgiallo, P.A.); Exhibit D (Mrs. Cole's Dep.), 67:16–68:1 and 70:6-17 (attesting that Mrs. Cole has no reason to dispute the costs that Developers paid to Boyd & Dowgiallo, P.A.).

39.     Developers was also required to relocate an electrical main in order to relocate a telephone pole within the Bonnielass subdivision to secure the release of Bond No. 893560S. To complete that electrical relocation work, Developers paid Baltimore Gas & Electric ("BG&E") $5,539.00. *See* Exhibit I (Graham Aff.), ¶¶ 34 and 41-42; *see also* Exhibit C (Mr. Cole's Dep.), 185:20–187:12 (attesting that Mr. Cole was aware that in order to obtain a release of Bond No. 893560S, Developers was required to pay BG&E to relocate a telephone pole, and attesting that Mr. Cole is responsible to reimburse Developers for the cost of paying BG&E to relocate the telephone pole); Exhibit FF (March 28, 2011 email from Frank Federico to John Liparini, Nick Liparini, and Mrs. Cole stating that Bonnielass "need[s] to relocate a BGE pole.")[8]; Exhibit D

---

[8] Frank Federico was employed by Brantly. *See* Exhibit C (Mr. Cole's Dep.), 48:9–49:5 (attesting that Frank Federico was employed by Brantly). John Liparini was an officer of Brantly, a member of Bonnielass, and a partner

(Mrs. Cole's Dep.), 68:5-7 and 70:18–71:16 (attesting that Mrs. Cole has no reason to dispute the costs paid by Developers to BG&E for the relocation of a telephone pole); Exhibit GG (July 12, 2011 email from Nick Liparini stating that "Bonnielass LLC is not able to complete the work.").

40.     In total, Developers incurred losses of $89,468.03 to secure the release of Bond No. 893560S.  *See* Exhibit I (Graham Aff.), ¶ 43.

### Litigation Against Developers' Bond Nos. 890176S And 890955S

41.     In or around March 2010, Developers was served with a Complaint by Hatfield's Equipment & Dedication Services, Inc. ("Hatfield's") in Howard County District Court Case No. 1721-2010, claiming damages against Developers' Bond Nos. 890176S and 890955S for unpaid funds for labor, materials, tools, equipment, supplies, supervision and services that Hatfield's supplied to the Marshalee and Brantwood subdivisions (the "Hatfield's Litigation"). *See* Exhibit I (Graham Aff.), ¶¶ 44-45; *see also* Exhibit HH (Hatfield's Complaint).

42.     In response to the Hatfield's Litigation, Developers was required to retain attorneys to represent it, investigate Hatfield's claims, and respond to the Complaint.  In total, Developers' incurred attorneys' fees of $6,592.81 to represent Developers in the Hatfield's Litigation. *See* Exhibit I (Graham Aff.), ¶ 46; *see also* Exhibit II (Affidavit of Shannon J. Briglia, Esq. (hereinafter "Briglia Aff.")), ¶ 9; Exhibit C (Mr. Cole's Dep.), 151:4-13 (attesting that Mr. Cole has no reason to dispute the claim by Hatfield's for work performed on the Marshalee subdivision), 152:16-18 (attesting that Brantly and Marshalee do not dispute Hatfield's claims), 156:4-11 (attesting that Mr. Cole does not have any facts to dispute the amounts paid to Developers' attorneys to respond to the Hatfield's Litigation), and 157:4-16 (attesting that Mr.

---

of Brantwood and Marshalee.  *See* Exhibit C (Mr. Cole's Dep.), 30:9-20; 33:9–36:21, and 40:12-14 (identifying John Liparini as a partner of Brantwood and Marshalee, an officer of Brantly, and a member of Bonnielass); *see also* Exhibit G (Marshalee Woods Limited Partnership Agreement).

Cole does not have any facts to dispute the reasonableness of the amounts paid to Developers' attorneys to respond to the Hatfield's Litigation).

43.     Developers also incurred losses of $23,826.22 to satisfy the partial judgment entered in favor of Hatfield's. *See* Exhibit I (Graham Aff.), ¶¶ 47-52; *see also* Exhibit JJ (Hatfield's Judgment Order); Exhibit KK (satisfaction of Hatfield's Judgment); Exhibit C (Mr. Cole's Dep.), 154:13–155:6 (attesting that Mr. Cole has no reason to dispute the amounts that Developers paid Hatfield's for work performed on the Marshalee and Brantwood subdivisions); *see also* Exhibit LL (February 8, 2010 letter from Developers to Mr. Cole confirming that Brantly and Marshalee did not dispute Hatfield's claims); Exhibit MM (Settlement Agreement and Release between Developers and Hatfield's).

### Developers' Demands For Indemnification

44.     Developers provided the Coles with written notice of the losses suffered by Developers by virtue of having issued the Bonds, and demanded that the Coles indemnify and reimburse Developers for those losses. *See* Complaint, ¶ 19; *see also* Mr. Cole's Answer, ¶ 19; Exhibit I (Graham Aff.), ¶ 52; Exhibit C (Mr. Cole's Dep.), 102:12–103:15 (attesting that Mr. Cole's Answer to paragraph 19 of Developers' Complaint is incorrect and that Mr. Cole indeed received written notice of Developers' losses); Exhibit I (Graham Aff.), ¶ 53; Exhibit NN (compilation of written notices of loss sent by Developers to the Coles); Exhibit D (Mrs. Cole's Dep.), 56:17–57:9 and 58:10–60:20 (attesting to the notices of loss that Mrs. Cole received).

45.     The Coles have failed to indemnify and reimburse Developers for the losses incurred by Developers arising out of having issued the Bonds. *See* Complaint, ¶ 20; *see also* Mr. Cole's Answer, ¶ 20 and the Affirmative Defenses therein; Mrs. Cole's Answer, ¶ 20 and the Affirmative Defenses therein; Exhibit I (Graham Aff.), ¶ 53; Exhibit C (Mr. Cole's Dep.), 106:1-

15 (attesting that Mr. Coles does not have any facts to support his affirmative defenses of accord and satisfaction, payment, and waiver); Exhibit D (Mrs. Cole's Dep.), 78:17–79:17 (attesting that Mrs. Cole does not have any facts to support her affirmative defenses of accord and satisfaction, payment, and waiver).

46.     The Coles each also testified that they do not have any facts to support their affirmative defenses that Developers' causes of action are barred by the applicable statute of limitations. *See* Mr. Cole's Answer; Exhibit C (Mr. Cole's Dep.), 106:22–107:4; *see also* Mrs. Cole's Answer; Exhibit D (Mrs. Cole's Dep.), 80:3-10.

## IV.     <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *see also Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). When this burden is met, the non-moving party then bears the burden of demonstrating that there are disputes of material fact that should proceed to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A non-movant, however, must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence" is insufficient to overcome summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

# V.    THE COLES' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

## A.    It Cannot Be Disputed That Mrs. Cole's Signature Was Notarized

In their motion for summary judgment, the Coles attempt to argue that Mrs. Cole either did not sign Indemnity Agreement No. 13522-03, or that her signature on that indemnity agreement was not notarized. However, the "undisputed facts" upon which they rely consist of Mrs. Cole's equivocal and uncertain recollection that she does has no memory of signing, buttressed by the even more tenuous recollections of others. The Coles can point to no definitive evidence, testimony, or averment that Mrs. Cole's signature is not on the indemnity agreement nor could they produce such evidence in the face of the original document bearing Mrs. Cole's signature and a completed notary certification. As to the alleged lack of notarization, the Coles ignore the reference to Mrs. Cole as the wife of Mr. Cole in the notarial block and the import of the presence of an embossed, notarial seal on the document. There simply can be no dispute that Mrs. Cole's signature was, indeed, on the indemnity agreement and notarized, and she is bound to the terms of the indemnity agreement.

Despite the Coles' valiant attempt to present the facts in the most favorable light, Mrs. Cole's declaration and answers to interrogatories actually demonstrate that Mrs. Cole is thoroughly uncertain as to whether she signed Indemnity Agreement No. 13522-03. *See* Exhibit H to the Cole's Motion for Summary Judgment (Mrs. Cole's Declaration), ¶ 5 ("I have no recollection of executing the Indemnity Agreement that is attached hereto (and to the Complaint) as Exhibit B, and "I do not believe that I have ever executed this document."); *see also* Exhibit H (Mrs. Cole's Answers to Interrogatories), No. 8 (stating the same, and that the reason she does not believe she executed that indemnity agreement is because of the notarization on that document); Exhibit D  (Mrs. Cole's Dep.), p. 36, line 15 – p. 37, line 22 (attesting that Mrs. Cole

"does not believe" that it is her signature on Indemnity Agreement No. 13522-03). Mrs. Cole further avers that she is certain she did not leave her house on January 6, 2004 to sign the indemnity agreement because she was not feeling well at that time. *See* Exhibit H to the Cole's Motion for Summary Judgment at ¶ 6. However, at no time during the discovery in this case or in support of the motion does Mrs. Cole unequivocally state that she did *not* sign the indemnity agreement or that the signature on the notarized original indemnity agreement is not hers.

Defendants also proffer evidence from Mr. Cole and Mr. Liparini in support of their assertion that Mrs. Cole did not sign the indemnity agreement. Mr. Cole asserts that he did not witness Mrs. Cole execute the indemnity agreement, and that he had no personal knowledge of her having signed the agreement. *See* Motion at p. 2 (relying upon Cole Decl. (Doc. 26-4), ¶¶ 5-6). Mr. Liparini provides the exact same lukewarm support. *Id.* (relying upon Liparini Decl. (Doc. 26-3), ¶ 5). At best, these averments only confirm that neither Mr. Cole or Liparini was aware of whether or not Mrs. Cole signed the indemnity agreement. Defendants also rely upon Mr. Cole to aver that his knowledge that Mrs. Cole did not sign Indemnity Agreement No. 13522-03 was based upon his having looked at Mrs. Cole's diary in order to prepare his answers to Developers' interrogatories. *See* Exhibit C (Mr. Cole's Dep.), 111:21–112:10. However, Mrs. Cole testified that she no longer has any of her diaries, destroying Mr. Cole's purported reliance upon them and rendering his recollection untrustworthy. *See* Exhibit D (Mrs. Cole's Dep.), 50:16-19. Further, Mr. Cole emphatically testified at his deposition that his company's policy was that wives would not sign personally on indemnity agreements." *See* Exhibit C (Mr. Cole's Dep.), 192:7-13. However, other documentation produced in this case demonstrates that another of the company's principal's wives, Kathleen Liparini, did provide personal indemnity to Developers. *See* Exhibit OO (Indemnity Agreement No. 13522-02); *see also* Exhibit PP

(November 5, 2003 email confirming Kathleen Liparini had provided indemnity). Such inconsistencies destroy any credible reliance upon the "fact" that Mrs. Cole may not have signed the indemnity agreement because she does not specifically recall signing it, she did not leave her house on the day the indemnity agreement was executed, or that neither her husband nor their business partner, John Liparini, do not recall witnessing her sign the indemnity agreement. Defendants offer no evidence from any person that Mrs. Cole did not, in fact, sign the agreement.

In any event, and despite Mrs. Cole's protestations to the contrary, there can be no dispute that Mrs. Cole's signature was notarized on Indemnity Agreement No. 13522-03. First, it is undisputed that Mrs. Cole is Mr. Cole's wife. *See* Statement of Undisputed Facts (hereinafter "Undisputed Facts"), ¶ 2. When examining the plain language of Indemnity Agreement No. 13522-03, the notarial page states that, *inter alia*, Mr. Cole and "(wife)" personally appeared before the notary public to sign that indemnity agreement. *See* Undisputed Facts, ¶¶ 13, 20. The location of the reference to "(wife)" immediately follows a semicolon and Mr. Coles' name. This placement is identical to how Mr. and Mrs. Liparini's names appear on the same document, with Mr. Liparini's name appearing first, followed by a semi-colon, followed by Mrs. Liparini's name (which has been whited out). The original signature page also contains the signature of the notary and a raised and embossed notarial seal, which is, by itself, "sufficient evidence" of Mrs. Cole's signature having been notarized. *See* Maryland Code, State Gov't, § 18-105(b) ("A certificate under the notarial seal of a notary shall be sufficient evidence of the notary having administered the oath as notary public."). The Coles' argument that Developers has brought forth no witnesses with personal knowledge of Mrs. Cole having signed Indemnity Agreement No. 13522-03 is of no import, and is also contradicted by the presence of

the notarial seal. Thus, by the mere presence of the notarial seal alone, it cannot be disputed that Mrs. Cole signed Indemnity Agreement No. 13522-03.

In an effort to preemptively avoid the import of the raised seal on the indemnity agreement, the Coles presented a declaration from Susan H. Maxen, the notary that notarized the signatures on Indemnity Agreement No. 13522-03, to support their contention that Mrs. Cole's signature was not notarized. *See* Exhibit Q to the Coles' Motion. This declaration falls far short of providing support or confirmation that Mrs. Cole did not sign the indemnity agreement or that her signature was not notarized, primarily because the Coles failed to provide the original document, with its raised notarial seal, for Ms. Maxen to review before providing her declaration. The declaration is also unpersuasive because Ms. Maxen's equivocates about her memory of the execution of Indemnity Agreement No. 13522-03, the declaration is internally inconsistent, and the circumstances under which it was obtained detract from its reliability.[9]

Ms. Maxen declared that she has "no recollection of being present when the Indemnity Agreement was executed, nor do I have any recollection of affixing my notary public seal to this document." *See* Coles' Exhibit Q, ¶ 3.[10] Ms. Maxen further declared that "Indemnity Agreement [No. 13522-03] does not stand out in my memory as one of those notarized documents, and I am unable to state with certainty whether I have seen this document prior to the date on which I signed this Declaration." *Id.* Ms. Maxen also declared that she is "not sufficiently familiar with Mrs. Cole's signature to have an opinion today as to whether this is actually Mrs. Cole's signature." *Id.* at ¶ 4. Ms. Maxen further declared that the only reason she

---

[9] Mrs. Cole also testified that Ms. Maxen worked for the company for many years and her declaration was prepared at the Coles' home, and at the request of the Coles, thus raising suspicions as to the impartiality of that declaration. *See* Exhibit D (Mrs. Cole's Dep.), 39:14-22 (attesting that Ms. Maxen worked for the Coles for longer than 7 years) and 41:15–47:14 (attesting to the Coles' meeting with Ms. Maxen at their home).

[10] Ms. Maxen's declaration thus also evidences her failure to comply with the Maryland Code as to the duties of notaries. *See* Md. Code, State Gov't, § 18-107 (requiring that notaries keep a register of all official acts).

does not believe that she did not notarize Indemnity Agreement No. 13522-03 is because her notary public seal does not appear on the copy of the indemnity agreement she was provided by the Coles. *Id.* at ¶ 8. Finally, Ms. Maxen attests that she does in fact believe that it is her own signature notarizing that indemnity agreement, and that her "notary certification process is not complete until I apply my notary public seal." *Id.* at ¶ 9. Importantly, at the time that declaration was obtained from Ms. Maxen, she was not shown the original document, with original signatures and her official notarial seal.[11] Her declaration states, "[a]ttached hereto as Exhibit B is a copy of an Indemnity Agreement No. 13522-03, which I have been told is also Exhibit B to the Complaint…." See Exhibit Q at ¶ 1.

Accordingly, the only conclusion that can deduced from Ms. Maxen's declaration is that she does not specifically recall having notarized Indemnity Agreement No. 13522-03, but that if her notarial seal was affixed to the indemnity agreement, then she would have notarized those signatures, and the notarization of, *inter alia*, Mrs. Cole's signature would be complete. It is undisputed that the original Indemnity Agreement No. 13522-03 indeed contains Ms. Maxen's embossed notarial seal. *See* Undisputed Facts, ¶ 20. Thus, and applying Ms. Maxen's own rationale, Mrs. Cole's signature was indeed notarized, and the notarization was complete. By statute, the presence of the raised seal is conclusive as to the sufficiency of the evidence. For these reasons, there can be no dispute that Mrs. Cole is bound by her notarized signature on Indemnity Agreement No. 13522-03.[12]

---

[11] Her declaration states, "[a]ttached hereto as Exhibit B is a copy of an Indemnity Agreement No. 13522-03, which I have been told is also Exhibit B to the Complaint…." See Exhibit Q at ¶ 1.

[12] Additional undisputed facts in this case further support the conclusion that Mrs. Cole signed Indemnity Agreement No. 13522-03: (a) Mrs. Cole was involved in the procuring of the Bonds from Developers and providing the Bonds to Howard County; (b) Mrs. Cole agreed to sign the indemnity agreement the day prior to the execution date of the Bonnielass Indemnity Agreement; (c) Mrs. Cole handwrote in the information on the Resolution Ratifying Indemnity attached to and incorporated in the Bonnielass Indemnity Agreement; and (d) Mrs. Cole was the Vice President of Brantly, the parent of or affiliated with Bonnielass. *See* Undisputed Facts, ¶¶ 7, 14, 19, 4.

**B.**  **The Indemnity Agreements Are Instruments Under Seal Thus Extending The Statute Of Limitations To Twelve Years**

As a matter of law, the Indemnity Agreements that are the subject of this litigation are instruments under seal, thus warranting application of the twelve-year statute of limitation. *See* Maryland Code, Cts. and Jud. Proc, § 5-102(a) (providing that an action on an "instrument under seal" "shall be filed within 12 years after the cause of action accrues."); *see also President and Directors of Georgetown Coll. v. Madden*, 505 F.Supp. 557, 584 (D. Md. 1980) (granting the surety the same twelve-year time period to recover from its indemnitors as a bond obligee would have to recover on the bond).[13]  In contractual indemnification actions, this Court calculates accrual of a cause of action from "the time *payment was made* by the party seeking indemnification." *Sherwin-Williams Co. v. ARTRA Group, Inc.*, 125 F.Supp.2d 739, 757 (D. Md. 2001) (evaluating accrual from each payment that was made by the indemnified party under a simple indemnity contract) (emphasis added).  Accordingly, the several different standards for determining accrual posited by the Coles and set forth in the charts presented in the Coles' motion for summary judgment are simply inapplicable to this contractual indemnity matter.

The signatures and resolutions attached to and incorporated within both indemnity agreements ratifying the indemnity were made "under seal."  Specifically, on Indemnity Agreement No. 13522-01, Brantly signed that indemnity agreement and included the term "(Seal)" following each of its signatures.  *See* Undisputed Facts, ¶¶ 15-16.  Additionally, Brantly's Resolution Ratifying Indemnity which is attached to and incorporated in Indemnity Agreement No. 13522-01 states that the resolution is "[g]iven under my hand the seal of the Company" and includes a third reference to "(Seal)," following the endorsement on that

---

[13] This Court has previously ruled that the extended period of limitations applies to at least Defendants Brantly, Brantwood, Marshalee, and Bonnielass, as this Court has entered judgment in favor of Developers and against those entities for all of Developers' losses occurring within the twelve-year period of limitations. *See* Order dated June 27, 2016 (Doc. No. 39).

resolution. *See id.* Similarly, Indemnity Agreement No. 13522-03 also includes a Resolution Ratifying Indemnity, whereby the resolution was also issued "under my hand the seal of the Company." *See id.* Such clauses establish that a document is one "under seal." *See Madden*, 505 F.Supp. at 584 (explaining that sealed documents commonly have an attesting or witness clause establishing that a document is one under seal, but that "[t]he word "(Seal)" printed beside an individual's signature has also been held sufficient to render the document under seal even in the absence of an attestation clause.).

In *Madden*, this Court evaluated the statute of limitations for an indemnification action, and concluded that because the statute of limitations for specialties under the Maryland Code also provides for a twelve-year limitations period on bonds, it would make "little sense" for a surety to have nine more years of liability to an obligee under its bonds than a principal and indemnitors would have to a surety, and therefore allowed the surety to proceed on its indemnification action:

> If a principal were freed of its obligation to indemnify the surety by the mere fact that the statute of limitations had run as between the principal and the obligee, it could often happen that a surety would be held liable while the principal upon whose fault the liability would rest would be free of any possibility of liability. In other words, under the applicable limitations statutes (and in the absence of provisions in the contracts themselves to the contrary) a surety would have nine more years of potential liability than the principal it had insured. Such a construction which is the conclusion to which [the indemnitor's] arguments lead makes little sense. Moreover, the conclusion that the statutes of limitations act so as to give a surety nine more years of liability than its principal would also mean that the statutes of limitations act to eliminate the operation of equitable principles of suretyship law when the statutes of limitations has run as to the claim of the obligee against the principal but not as to the claim of the obligee against the surety.

*Id.* at 596. *Madden* further concluded that to allow the surety to cross-claim against or implead its indemnitor for indemnification "comports with the provisions of suretyship law and does no violence either to the principles behind limitations laws, to the language of the applicable

limitations laws, or to the federal rules of civil procedure." *Id.* Accordingly, under the rationale previously established by this Court in *Madden*, the Indemnity Agreements at issue are subject to a twelve-year limitation, and Developers may proceed against the Coles for the entirety of Developers' losses.

The cases relied upon by the Coles to refute the sealing of the Indemnity Agreements are not determinative of Developers' right to recover against the Coles for all of Developers' losses. The Coles rely upon *Tipton v. Partner's Mgmt. Co.*, 364 Md. 419 (2001), but this Court has stated that the discussion in *Tipton* regarding the use of the word "seal" on documents is merely *dicta*, and those documents only involved the conveyance of real property interests. *See Hampt v. Chernow*, 2013 WL 4176959 at *4 (D. Md. Aug. 13, 2013) (attached as Exhibit QQ) (noting that Judge Cathell's discussion in *Tipton* is "an interesting historical muse regarding the use of the word 'seal' on documents involving the conveyance of interests in real property" but that *Tipton* did not reach a conclusion, "and, even if did, it would be dictum."). The Court of Special Appeals of Maryland has also found *Tipton* inapplicable in determining whether an instrument is under seal, as *Tipton's* analysis was limited to the interpretation of the statute of limitations as to a residential lease, and "not on whether the lease was a sealed instrument." *Columbia Ass'n, Inc. v. Poteet*, 199 Md. 537, 553 (2011) (recognizing that since the 18th century, the three year limitations has applied to residential leases, thus "*Tipton* is inapplicable in the instant case.").[14]

Additionally, and unlike in *Federalsburg v. Allied Contractors*, 275 Md. 151 (1975), upon which the Coles also rely, in this matter, the seals exist on the signatory page of Indemnity Agreement No. 13522-01 and on the Resolutions Ratifying Indemnity, which are attached to, and

---

[14] Moreover, and as discussed in more detail below, *Columbia Ass'n, Inc.* also stands for the rule that a defendant's acknowledgement of a debt removes the bar of the statute of limitations, such that whether the Indemnity Agreements are under seal or not, does not bar Developers' cause of action against the Defendants for the entirety of Developers' losses.

incorporated into both of the Indemnity Agreements. *See* Undisputed Facts, ¶¶ 15-16. In *Federalsburg*, the only evidence of a seal was an impression of the corporate seal on the parties' contract, without any reference to a seal or extrinsic evidence to show that the use of the seal was intended to make the document a specialty. *See Federalsburg*, 275 Md. at 279.

In sharp contrast, here, Mr. Cole signed both Resolutions Ratifying Indemnity after attesting that it was done "under my hand the seal of the Company," and his signature on the Resolution for Indemnity Agreement No. 13522-01 is followed by the word "(Seal)." *See* Undisputed Facts, ¶¶ 15-16. The Coles cite no support for their contention in their motion that the Resolutions Ratifying Indemnity were separate documents that have no bearing on the Indemnity Agreements.[15] Thus, there can be no question that Brantly, John Liparini, and Bonnielass placed their seals on Indemnity Agreement No. 13522-01, and that Bonnielass placed its seal on Indemnity Agreement No. 13522-03. *See* Undisputed Facts, ¶¶ 15-16.[16] Since the terms of the Indemnity Agreements expressly state that each of the indemnitors thereto are jointly and severally liable for all loss, and as discussed in more detail below, the Coles are liable for all of Developers' losses which are the responsibility of Brantly, Mr. Liparini, and Bonnielass. *See* Undisputed Facts, ¶¶ 10-25.[17]

Accordingly, the Indemnity Agreements are instruments under seal, and under *Madden*, the extended period of limitations by which Developers may seek to recover its losses is

---

[15] In fact, the Coles have no factual support for their affirmative defense that Developers' claims are barred by the statute of limitations. *See* Undisputed Facts, ¶ 46.

[16] For this reason, the Coles' citation to *Rouse-Teachers Properties, Inc. v. Md. Cas. Co.*, 385 Md. 575 (2000) is also inapplicable, as *Rouse-Teachers* discusses a directional phrase within a contract for the parties to "affix" their corporate seal to the document. Here, however, the seals were indeed affixed to the Indemnity Agreements.

[17] The intention of the indemnitors to waive the three-year statute of limitations is further evidenced within the Indemnity Agreements by paragraph 8.4 of each of the Indemnity Agreements, which states that the parties "hereby waive and agree not to assert [ . . . ] The defense of the Statute of Limitations in any action hereunder or for the collection of any claim or the performance of any obligation indemnified hereby." Exhibits A and B, paragraph 8.4 thereto. While Developers recognizes that waivers of the statute of limitations in Maryland are void as against public policy, such terms still evince an understanding and/or intent by the Coles that Developers would not be limited to the three-year statute of limitations.

warranted in this action.  However, even in the event that this Court were to conclude that the Indemnity Agreements are simple contracts as to the Coles, as discussed below, the Coles are still liable to Developers for all of Developers' losses arising within the extended limitations period, as the Coles are jointly and severally liable under the terms of the Indemnity Agreements with the corporate entities who did sign and seal the Indemnity Agreements.  As discussed below, Mr. Cole has also acknowledged the debt to Developers, which removes the bar of the statute of limitations as to him.

### C.  The Coles Are Jointly And Severally Liable For Developers' Losses

The terms of the Indemnity Agreements expressly state that each of the indemnitors "jointly and severally" agree to indemnify Developers, and that such obligations are "joint and several."  *See* Undisputed Facts, ¶¶ 10, 21, 25.  While Developers maintains that all indemnitors are subject to the extended twelve-year statute of limitations, there can be no question that Defendants Brantly and Bonnielass, as well as John Liparini, signed the Indemnity Agreements under seal, definitively rendering the twelve-year statute of limitations applicable to them.  *See* Undisputed Facts, ¶¶ 15-16.[18]  Therefore, since the Coles agreed to be jointly and severally liable with Brantly, Bonnielass and John Liparini to Developers' for the obligations of their co-indemnitors, the Coles are therefore liable to Developers for the entirety of Developers' losses within the twelve year limitations period.  *See Madden*, 505 F.Supp. at 597-8 (noting that "[t]he words 'joint and several' are oft used and seemingly well understood," and that the Court has not found any authority indicating that "the words 'jointly and severally' have ever been interpreted so as to bar the liability of either obligor."); *see also Westfield Ins. Co. v. Site Maintenance, Inc.*, 2013 WL 5964505 (D. Md. Nov. 6, 2013) (attached as Exhibit RR) (holding that as a result of

---

[18] Moreover, this Court has already ordered that Defendants Brantly, Brantwood, Marshalee, and Bonnielass are liable to Developers for the entirety of Developers' losses.  *See* Order dated June 27, 2016 (Doc. No. 39).

the defendants'/indemnitors' breach of the indemnity agreement, the defendants/indemnitors are jointly and severally liable to the surety).

### D. Mr. Cole's Acknowledgment Of The Debt To Developers Removes The Bar Of The Statute Of Limitations To Him

Throughout Mr. Cole's deposition testimony, Mr. Cole acknowledged that he is liable to Developers for some of Developers' losses. *See* Undisputed Facts, ¶¶ 26-43. In Maryland, it is well-settled that the acknowledgement or admission by the debtor, "in word and/or deed, that the debt is still owed by the debtor" is sufficient to remove the bar of the statute of limitations. *Columbia Ass'n, Inc.*, 199 Md. App. at 557-561 ("Maryland law has long recognized that an acknowledgement of a debt barred by the statute of limitations removes the bar and revives the remedy."); *see also Potterton v. Ryland Group, Inc.*, 289 Md. 371, 375 (1981) (holding that "an acknowledgement of such a debt from which a promise to pay may be implied, removes the bar created by the statute of limitations and revives the debt."); *Doughty v. Bayne*, 222 Md. 361, 364-5 (1960) (explaining that "it has long been the rule that an acknowledgement revives the remedy and avoids the operation of the statute [of limitations]" and finding that the debtor's refusal to pay the debt because of lack of money was sufficient to bring the statement within the rule announced in *Oliver v. Gray*); *Oliver v. Gray*, 1 H. & G. 204 (1827) (announcing that "[a]ny unqualified acknowledgement of a present subsisting debt, or acknowledgement, with no other excuse for not paying it than a reliance on the bar created by the act of limitations, is sufficient to take it out of the act.").

The theory behind this long-standing rule in Maryland is perhaps best explained by the decision in *Oliver*, which stated that "[w]hen, therefore, a party admits the debt to be due, but standing upon the act of limitations alone, in the same breath refuses to pay it, he admits a case, to which the act, according to its spirit and reason, does not apply, under the interpretation given

to it, and his refusal cannot avail him." *Id.* This was later further explained in *Columbia Ass'n* which concluded that "if the money is still due and owing, the defendant has not suffered from lapse of time, nor has any inconvenience resulted to him therefrom. ... The Act of Limitations was never intended to prevent the recovery of debts really due, but to protect persons from old claims when the evidence of their discharge, from length of time was supposed to have been lost." *Columbia Ass'n, Inc.*, 199 Md. App. at 557 (citing to *Barney v. Smith*, 4 H. & J. 485 (1819)). "The acknowledgment of the debt sufficient to remove the statute of limitations may even be made after the commencement of the litigation. *See id.*

Mr. Cole's admission of the debt owed to Developers for all of Developers' losses results in the removal of the bar of the statute of limitations, such that at the very least, Mr. Cole is liable to Developers for the entirety of Developers' losses. *See Columbia Ass'n*, 199 Md. App. at 557-61; *Potterton*, 289 Md. at 375; *Doughty*, 222 Md. at 364-5; *Oliver, supra*. Mr. Cole's admission of liability to Developers for the losses incurred by Developers as a result of Developers having issued the Bonds on behalf of the Defendants, mandates that the Coles' motion for summary judgment be denied, and judgment entered in favor of Developers.

### E. Developers' Count III For Exoneration Properly Pleads an Alternative Theory of Relief To Developers' Counts I And II Of The Complaint

*Georgetown Coll. v. Madden,* relied upon by the Coles, does not limit a cause of action for exoneration only to claims against bond principals. Moreover, the terms of the Indemnity Agreements expressly state, *inter alia*, that the Coles are indemnitors, are not limited to solely being guarantors, and have expressly agreed to "procure the discharge *and exoneration* of [Developers]." *See* Exhibits A and B (Indemnity Agreements) p. 1 (defining the terms "Indemnitor" and "Guarantor"), ¶ 14.2 (stating that "Principal and Indemnitor shall, upon request of Surety, procure the discharge and exoneration of Surety under any Bond and from and against

any and all liability by reason thereof."), and the signature pages to each indemnity agreement, identifying the Coles as indemnitors. The Coles, therefore, are subject to common law claims of exoneration and contractual exoneration. While Developers disputes, *inter alia*, the Coles' contention that exoneration only applies to claims against bond principals, Developers concedes that this count is an alternative theory of recovery to the claims for breach asserted in Counts I and II and may be obviated when judgment is entered in Developers' favor on Counts I and II.

VI.    **MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT - DEVELOPERS IS ENTITLED TO JUDGMENT AGAINST THE COLES AS A MATTER OF LAW**

As set forth in more detail in Section V(A) above, there can be no dispute that Mrs. Cole's signature on Indemnity Agreement No. 13522-03 was notarized, thus establishing the authenticity of Mrs. Cole's execution of that indemnity agreement and her liability to Developers. Additionally, and as set forth in Section V(B) above, the Indemnity Agreements are instruments under seal, subject to a twelve-year statute of limitations by which Developers may recover the entirety of its losses against the Coles. Additionally, and even if this Court were to conclude that the Indemnity Agreements were not under seal as to each of the Coles, the Coles' joint and several liability with their co-indemnitors who have either already been found liable for the entirety of Developers losses or whom are subject to such liability, renders them liable for the entirety of Developers' losses. Finally, and as discussed in Section V(D), above, Mr. Cole is also liable for the entirety of Developers' losses, as Mr. Cole acknowledged the debt owed to Developers, thereby removing the bar of the statute of limitations. For these reasons, and as discussed in more detail below, summary judgment should be entered in favor of Developers and against the Coles for the entirety of Developers' losses.

### A. The Indemnity Agreements Are Binding And Enforceable And Developers' Losses Were Reasonable

The facts plead in Developers' Complaint, together with the undisputed facts set forth above, demonstrate that under the clear mandate of the Indemnity Agreements, Developers suffered losses as a result of having issued the Bonds. *See* Undisputed Facts at ¶¶ 26-43. The Indemnity Agreements delineate the rights of Developers and the liability of the Coles in the event that a loss is suffered as a result of Developers having issued the Bonds. *See id.* at ¶¶ 10, 21-24.

It is well-settled that indemnity agreements are binding and enforceable contracts, whereby the indemnitors guarantee to make the surety whole for any disbursements by the surety on an indemnitor's behalf. *See, e.g., Fid. & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (explaining that under the "letter of the Contractor's contract of indemnification," sureties have the right to reimbursement); *see also Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 380 Md. 285, 300 (2004) (explaining that indemnity agreements, being written contracts, "must be construed in accordance with our traditional rules of objective contract interpretation"); *Hanover Ins. Co. v. Persaud Companies, Inc.*, No. GJH-13-472, 2015 WL 4496448, at *3 (D. Md. July 22, 2015) (attached as Exhibit SS) ("In the event that the surety discharges the principal's obligations and an express indemnification contract exists, the surety is entitled to rely upon the 'letter of the contract for indemnification.'"). The right to indemnification will be "uniformly sustained and upheld," unless payment to a bond claimant has been made "through fraud or lack of good faith":

> Provisions such as those just cited, while strict, are common in contracts of indemnification executed by contractors and others to induce the execution of performance bonds by compensated sureties, and they have been uniformly sustained and upheld, subject to a single exception to be noted…. The only exception to this provision arises when the payment has been made 'through fraud

or lack of good faith' on the part of the surety but any challenge to such payment must be rested solely on that claim of bad faith or fraud.

*Fidelity & Deposit Co. of Maryland*, 722 F.2d at 1163.

"In Maryland, the good faith standard requires the surety to act in a reasonable manner in handling or paying claims." *Argonaut Ins. Co. v. Wolverine Const., Inc.*, 976 F. Supp. 2d 646, 654 (D. Md. 2013); *see also Atlantic Contracting*, 380 Md. at 308 (concluding that "a standard of reasonableness also should be implied in the good faith analysis of a surety's actions in determining whether it may recover against the principal."). *Atlantic Contracting* held that the factors to be considered in determining whether a surety made a reasonable, good faith settlement under the terms of the bond and indemnity agreement included: "(1) the obligations of the surety as provided by the terms and coverage of the bond; (2) whether the principal has made more than generalized demands that the surety deny the claim; (3) the cooperation, or lack thereof, by the principal, in dealing with the surety; (4) the thoroughness of the investigation performed by the surety." *Atlantic Contracting*, 380 Md. at 309. "The reasonableness requirement is meant only to filter the most egregious, careless, or inattentive conduct, short of fraud, of a surety; such as making a payment on a bond that the surety clearly knows or should know is not covered by the bond." *Id.* at 314.

In this case, Developers meets each of the factors set forth in *Atlantic Contracting* to demonstrate it reasonably dealt with the claims against its Bonds. *See generally* Undisputed Facts at ¶¶ 8-45. First, Developers' obligations are expressly stated in the Bonds, and bind Developers to the completion of the subdivisions or require that Developers guarantee the payment of all labor, materials, supplies, and equipment used in the development of the subdivisions. *See* Undisputed Facts at ¶ 8 (identifying the Bonds); ¶¶ 26-27, 30, 32-33, 34, 36-39, and 42-43 (citing to the Coles' deposition testimony that Brantwood, Marshalee, and

Bonnielass did not complete the subdivisions secured by the Bonds). In no instance did the principals on Developers' Bonds demand that Developers deny the claims against the Bonds, and the Coles have even testified that Developers was liable to the bond claimants. *See id.* There can also be no dispute that Developers conducted a thorough investigation of each of the claims or demands against its Bonds, through Developers' retained attorneys or construction consultants. *See* Undisputed Facts at ¶¶ 28, 31-34, 36, and 42. There is significant evidence that the indemnitors requested Developers to pay many of the claims which the indemnitors requested their creditors present to Developers.[19] Finally, the reasonableness of the losses incurred by Developers is also undisputed, as the Coles testified under oath that they know of no facts to support any position that Developers' losses were not reasonable. *See* Undisputed Facts, ¶¶ 27-29, 31-33, 36-39, and 42-43.

It is also undisputed that the Coles agreed that by executing the Indemnity Agreements, in the event of a claim brought against Developers, "Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed." *See* Undisputed Facts, ¶ 22. The terms of the Indemnity Agreements also obligate the Coles to completely exonerate and indemnity Developers from and against any "liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature." *See id.* at ¶ 21. The terms of the Indemnity Agreements also state that: "[i]n any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor." *See id.* at ¶ 23. This Court has permitted affidavits and exhibits similar to the ones

---

[19] *See, e.g.*, Undisputed Facts, ¶¶ 33, 42, 43.

attached hereto as sufficient to ascertain a surety's damages. *See Hanover Ins. Co., supra* (finding that "the Court need not hold a hearing as to Hanover's damages as that amount is easily ascertainable from Hanover's pleadings and exhibits," including Hanover's bonds, indemnity agreements, copies of checks, and affidavits from Hanover's counsel regarding attorneys' fees and costs). For these reasons, the Indemnity Agreements must be upheld and enforced, and the Coles held liable to Developers for all losses incurred by Developers arising from Developers having provided the Bonds.

**B.** **The Coles Are Also Liable For Developers' Attorneys' Fees**

As a result of executing the Indemnity Agreements, the Coles also agreed to be liable to and indemnify Developers for all expenses and attorneys' fees incurred by Developers as a consequence of having provided the Bonds. *See* Undisputed Facts at ¶¶ 10-25. "In Maryland, a contractual obligation to pay legal fees is generally valid and enforceable." *Argonaut Ins. Co.*, 976 F. Supp. 2d at 656 (citing to *Atlantic Contracting*). This Court's Local Rules provide guidelines for the hourly rates charged by attorneys. *See* Appendix B to the Court's Local Rules. Developers' attorneys' fees fall within those guidelines. *See* Exhibit II (Briglia Aff.), ¶¶ 5-8.

Specifically, in this matter, Developers has been represented by two attorneys, Shannon J. Briglia and Shoshana E. Rothman. Ms. Briglia has practiced law for over twenty-eight (28) years, and her hourly rate for Developers is discounted to $275.00 per hour. Shoshana E. Rothman has practiced law for ten (10) years, and her hourly rate for Developers is discounted to $240.00 per hour. Both hourly rates fall within this Court's guidelines for hourly rates. *See* Appendix B to the Court's Local Rules. Where an attorney's hourly rates fall within this Court's guidelines, such rates have been found to be reasonable. *See Hanover Ins. Co., supra* (finding that where the surety's attorneys' hourly rates fell within this Court's guidelines, they were

reasonable, and awarding the surety its attorneys' fees in the amounts requested). Additionally, given the number of Defendants and Bonds involved in this matter, the amount of hours incurred by Developers' attorneys on this matter are reasonable. *See* Exhibit II (Briglia Aff.), ¶ 15. For these reasons, Developers is entitled to recover from the Coles its attorneys' fees and expenses in the amount of $40,347.87. *See id.; see also* Exhibit I (Graham Aff.), ¶ 54.[20]

## VII.    CONCLUSION

WHEREFORE, Developers respectfully requests that this Court:

A.      Deny the Coles' Motion for Summary Judgment in its entirety;

B.      Enter judgment in favor of Developers and against Mr. Cole, jointly and severally, in the amount of $349,485.96, plus attorneys' fees in the amount of $42,718.31, plus interest at the legal rate of six percent (6%) from February 17, 2011, post-judgment interest, as well as any post-judgment collection costs that Developers may expend in enforcing its judgment;

C.      Enter judgment in favor of Developers and against Mrs. Cole, jointly and severally, in the amount of $97,603.03, plus attorneys' fees in the amount of $42,718.31, plus interest at the legal rate of six percent (6%) from February 17, 2011, post-judgment interest, as well as any post-judgment collection costs that Developers may expend in enforcing its judgment; and

D.      Enter such other and further relief as this Court deems just and proper.

---

[20] Developers is also requesting a declaration that it is entitled to attorneys' fees and costs incurred to collect the judgment, which fees and costs are expressly made recoverable under Paragraphs 1.5 and 2.5 of the Indemnity Agreements. *See* Exhibits A and B (Indemnity Agreements), ¶¶ 1.5 and 2.5.

Dated: August 5, 2016                    Respectfully submitted,

**DEVELOPERS SURETY AND INDEMNITY COMPANY**

By Counsel

/s/ Shannon J. Briglia
Shannon J. Briglia, Esq. (Bar No. 06718)
Robert J. Dietz, Esq. (Bar No. 28994)
Shoshana E. Rothman, Esq. (Pro Hac Bar No. 804495)
BRIGLIAMCLAUGHLIN, PLLC
1950 Old Gallows Road, Suite 750
Vienna, Virginia 22182
Telephone: (703) 506-1990
Facsimile: (703) 506-1140
sbriglia@briglialaw.com
rdietz@briglialaw.com
srothman@briglialaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 5th day of August, 2016, I caused a true and correct copy of

the foregoing to be served on the following via the Court's CM/ECF system:

Steven J. Lewicky, Esq.
Megan R. O'Connor, Esq.
Davis, Agnor, Rapaport & Skalny, LLC
10211 Wincopin Circle, Suite 600
Columbia, Maryland  21044
*Counsel for Defendants Glen Hannah Cole and Hugh F. Cole, Jr.*

/s/ Shannon J. Briglia