## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY | * * * * | |
| v. | * * | Civil No. JFM-15-3465 |
| BRANTLY DEVELOPMENT GROUP, INC., *et al.* | * * * | |
| | ****** | |

## MEMORANDUM

Plaintiff Developers Surety and Indemnity Company ("Developers") brings suit against defendants: (1) Brantly Development Group, Inc. ("Brantly"), (2) Marshalee Woods Limited Partnership ("Marshalee"), (3) Brantwood, LLC ("Brantwood"), (4) Bonnielass, LCC ("Bonnielass"), (5) Hugh F. Cole, Jr. ("Mr. Cole"), and (6) Glen Hannah Cole ("Mrs. Cole"), seeking indemnification for losses, costs, and expenses incurred by Developers in connection with the issuance of several surety bonds. On June 27, 2016, judgements of default were entered against Brantly, Marshalee, Brantwood, and Bonnielass. Now pending is remaining defendants Hugh F. Cole, Jr. and Glen Hannah Cole's motion for partial summary judgment on claims asserted against them (ECF No. 40), and Developers' cross-motion for summary judgment against the Coles. (ECF No. 41). The parties have fully briefed the motions, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the Coles' motion is denied in part and granted in part, and Developers' cross-motion is granted in part and denied in part.

## BACKGROUND

The parties' dispute arises out of Developers' losses incurred in connection with issuing nine subdivision surety bonds to defendants. Developers is a national surety company engaged in the business of construction and surety bonding. (ECF No. 1, ¶ 1; *see also* ECF No. 13, p. 1; ECF No. 14, p. 1). Mr. and Mrs. Cole ("the Coles") are husband and wife, and are citizens of the State of Maryland. (ECF No. 41, p.3; *see also* ECF No. 41, Ex. C, 72:8-10). Defendant Hugh F. Cole, Jr. is: "(1) a shareholder of Defendant Brantly Development Group, Incorporated, (2) a limited partner in Defendant Marshalee Woods Limited Partnership, (3) a member of Defendant Brantwood, LLC, and (4) a member of Defendant Bonnielass LLC." (ECF No. 20, p. 1). Mrs. Cole is or was a Vice President of Brantly (ECF No. 41, Ex. D, 33:1-4), and collectively the Coles own or owned twenty-two percent (22%) of Marshalee Woods. (ECF No. 41, Ex. C, 35:22-36-7).

Beginning around 1998, Developers started issuing subdivision surety bonds for several real estate development projects undertaken by defendants. (ECF No. 1, ¶ 11; *see also* ECF No. 41, Exs. J-R).[1] In order to induce Developers to issue these bonds, defendants executed two indemnity agreements: (1) Indemnity Agreement No. 13522-01 ("01"), dated December 7, 1999,

---

[1] Specifically, the following bonds were issued (ECF No. 41, Exs. J-R):
1. Marshalee Performance Bond No. 890176S in the penal sum of $88,863.00;
2. Marshalee Labor and Material Payment Bond No. 890176S in the penal sum of $44,431.50;
3. Brantwood Forest Conservation Agreement Performance Bond No. 890383S in the penal sum of $94,532.00;
4. Brantwood Performance Bond No. 890955S in the penal sum of $398,300.00;
5. Brantwood Labor and Material Payment Bond No. 890955S in the penal sum of $199,150.00;
6. Brantwood Performance Bond No. 891425S in the penal sum of $515,250.00;
7. Brantwood Labor and Material Payment Bond No. 891425S in the penal sum of $257,625;
8. Bonnielass Performance Bond No. 893560S in the penal sum of $108,480.00; and
9. Bonnielass Labor and Material Payment Bond No. 893560S in the penal sum of $54,240.00.

and (2) Indemnity Agreement No. 13522-03 ("03"), dated November 6, 2003 (collectively the

"Indemnity Agreements"). (ECF No. 1, Exs. A & B).  Under the terms of the Indemnity

Agreements, which are substantively identical, defendants agreed to, *inter alia*, be jointly and

severally liable,[2] and to indemnify Developers:

> [F]rom and against any and all liability, loss, claims, demands, costs, damages,
> attorneys' fees, and expenses of whatever kind or nature, together with interest
> thereon at the maximum rate allowed by law, which Surety may sustain or incur
> by reason of or in consequence of the execution and delivery by Surety of any
> Bond on behalf of Principal, whether or not Surety shall have paid any amount on
> account thereof[.]

(ECF No. 1, Ex. A, p. 1 & Ex. B, p. 1).  Indemnity Agreement 01 contains a signature page

listing indemnitors as: (1) "John F. Liparini" (a non-party to this case), (2) "Hugh F. Cole, Jr.,"

and (3) Brantly Development Group, Inc.  (ECF No. 1, Ex. A, p. 9).  The list of names is

accompanied by signatures: Mr. Liparini signed for himself individually and on behalf of Brantly

as its President, and Mr. Cole signed on behalf of himself individually. *Id.*  Indemnity Agreement

03 similarly contains a signature page listing five indemnitors including, *inter alia*, "Hugh F.

Cole, Jr., Individually" and "(wife); Individually." (ECF No. 1, Ex. B, p. 8).  The list of names is

accompanied by signatures, including Mr. Cole's signature above "Hugh F. Cole, Jr.,

Individually," and a signature resembling "Glen Hannah Cole" above the text: "(wife);

Individually." *Id.*  Both Indemnity Agreements are followed by a "RESOLUTION –

RATIFYING INDEMNITY" whereby Brantly formally adopted the Indemnity Agreements.

(ECF No. 1, Ex. A, p. 12 & Ex. B, p. 11).  These resolutions contain the text "Given under my

---

[2] Both Indemnity Agreements contain the following clause (ECF No. 1, Ex. A, p. 7; Ex. B, p. 6):
"The obligations of Principal and Indemnitor hereunder are joint and several.
Surety may bring separate suits hereunder against any or all of the undersigned as
causes of action may accrue hereunder. Indemnitor hereby expressly waives the
benefit of any statute or rule of law which gives Indemnitor the right to require
Surety to first proceed against Principal or which exonerates Indemnitor from any
liability if Surety fails to first proceed against Principal."

hand the seal of the Company" and are signed by Mr. Cole in his capacity as Secretary of Brantly. *Id.*

Brantly, Marshalee, Brantwood, and Bonnielass eventually defaulted on their obligations covered by the bonds by, *inter alia:* "(1) failing to complete the work secured by the Bonds; (2) failing to procure the release of the Bonds; and (3) failing to pay for all labor, materials, supplies, and equipment used in the development of the residential subdivisions secured by the Bonds." (ECF No. 1, ¶ 17).  Developers filed suit against defendants on November 13, 2015, alleging losses in excess of $308,987.25. *Id.* at ¶ 18.  Counts I and II of the complaint alleged breach of contract regarding Indemnity Agreement 01 and 03, respectively. *Id.* at ¶¶ 22-35.  Count III alleged a common law claim for exoneration. *Id.* at ¶¶ 36-39.

On June 27, 2016, judgements of default were entered against defendants Brantly, Marshalee, Brantwood, and Bonnielass after they failed to file responsive pleadings. (ECF No. 39).  Remaining defendants, the Coles, moved for partial summary judgment on all claims asserted against Mrs. Cole (Counts II and III) and against Mr. Cole (Counts I, II, and III). (ECF No. 40, pp. 26-27).  Developers, in turn, filed a cross-motion for summary judgment against the Coles on all counts. (ECF No. 41).

**STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure provides the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for *summary*

4

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A genuine issue of material fact exists where, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 247. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Indeed, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express* Corp., 190 F.3d 624, 633 (4th Cir.1999). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**ANALYSIS**

The Coles seek partial summary judgment on each of plaintiff Developers' three claims.

Developers, in response, seeks summary judgment against the Coles on all claims and also seeks

interest and attorneys' fees. I consider these claims in turn.

## I.      Counts I and II: Breach of Indemnity Agreements 01 & 03

Under Maryland law, "the fundamental principles governing surety bond and

indemnification relationships" are as follows:

> A surety bond is a three-party agreement between a principal obligor, an obligee,
> and a surety. In a performance bond context, the surety assures the obligee that if
> the principal fails to perform its contractual duties, the surety will discharge the
> duties itself, either by performing them or paying the obligee the excess costs of
> performance. In a payment bond, the surety guarantees the principal's duty to the
> obligee to pay its (the principal's) laborers, subcontractors, and suppliers.
>
> . . . The surety is primarily or jointly liable with the principal and, therefore, is
> immediately responsible if the principal fails to perform. Ultimate liability,
> however, is with the principal, not the surety. Upon default of the principal, the
> surety may pay the money and proceed against the principal for indemnity. The
> bond is the measure of the surety's obligation. In the construction industry, it is
> standard practice for surety companies to require contractors for whom they write
> bonds to execute indemnity agreements by which principals and their individual
> backers agree to indemnify sureties against any loss they may incur as a result of
> writing bonds on behalf of principals.

*Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 468 (Md. 2004)

(internal citations omitted).

The Coles never dispute whether defendants breached the terms of Indemnity

Agreements 01 and 03. (*See generally* ECF No. 40 & ECF No. 42) (opting to not dispute these

facts). Rather, the Coles' two primary arguments are: (1) Mrs. Cole is exempt from all liability

because she did not properly execute Indemnity Agreement 03; and (2) a majority of Developers'

claims are time-barred by Maryland's three-year statute of limitations on civil actions. *Id.*

Developers, however, contends that: (1) the Coles are necessarily liable, regardless of any

limitations issues, due to joint and several liability; (2) the applicable statute of limitations is

6

twelve years and not three years because the agreements were executed "under seal"; (3) even if

the agreements were not executed "under seal," *all* indemnification agreements related to surety

bonds automatically qualify for a twelve-year limitations period; and (4) in the alternative,

claims are not time-barred because the Coles "acknowledged" the debt. (ECF No. 41).  In order,

I will address: (A) whether Mrs. Cole executed Indemnity Agreement 03; (B) the limitations-

related issues; and (C) liability and damages.

### A. Mrs. Cole's Execution of Indemnity Agreement 03

Indemnity Agreement 03 states: "ALL SIGNATURES MUST BE ACKNOWLEDGED

BY A NOTARY PUBLIC." (ECF No. 1, Ex. B, p. 8).  The parties disagree over whether Mrs.

Cole's signature on Indemnity Agreement 03 was properly notarized, and thus whether she can

be held liable for breaching the agreement.  Under Maryland law, "[a] certificate under the

notarial seal of a notary *shall* be sufficient evidence of the notary having administered the oath as

notary public." Md. Code Ann., State Gov't § 18-105 (emphasis added).  It is undisputed that the

original version of Indemnity Agreement 03 includes a raised or embossed notarial seal, although

this seal is not discernable on photocopies. (ECF No. 1, Ex. B, p. 10; *see also* ECF No. 41, Ex.

D, 36:4-37:3) (attesting that the notarial seal *is* present on Indemnity Agreement 03).  Indemnity

Agreement 03 also contains a signature—"Glen Hannah Cole"—on the designated signature

page, and beneath the signature the following words appear: "(wife); Individually." (ECF No. 1,

Ex. B, p. 8).  This signature sequentially follows the undisputed signature of Mr. Cole. *Id.*  The

notarial page, which then follows the signature page, states the following individuals

"PERSONALLY APPEARED: John F. Liparini; [Kathleen Liparini, redacted in original]; Hugh

F. Cole, Jr.; (wife)." *Id.* at 10.  The sequential order of "(wife)" after "Hugh F. Cole, Jr." on the

notarial page matches the sequential order of "(wife); Individually" after "Hugh F. Cole, Jr.;

Individually" on the signature page. *Id.* at 8, 10.  While Developers argues that "(wife)" on the notarial page refers to Mrs. Cole (ECF No. 41, p. 20), the Cole's contend that "(wife)" instead refers to Kathleen Liparini, despite the fact Mrs. Liparini did not sign the signature page, and despite the fact Mrs. Liparini's name was redacted on the notarial page. *Id.* at 8.

Mrs. Cole counters that she has "no recollection" of executing Indemnity Agreement 03, and she does "not believe that [she] ever executed this document."  (ECF No. 40, pp. 1-2; ECF No. 26-5, ¶ 5).  She further argues she could not have signed the document on January 6, 2004, the date of the notary public certification of signatures, because she was "very ill with influenza" at the time, and her health did not allow her to leave the house between January 1, 2004, and January 9, 2004. *Id.*  This is supposedly supported by the declarations of Mr. Cole and Mr. Liparini, who claim that they have "never witnessed Glen Hannah Cole execute the Indemnity Agreement [03]." (ECF No. 26-3, ¶ 5; ECF No. 26-4, ¶ 6).  However, Mr. Cole's statements to this effect were, in part, based upon a review of his wife's diary to prepare his answers to interrogatories. (ECF No. 41, Ex. C, p. 111:09-112:10).  And evidently, Mrs. Cole is no longer in possession of any diary. (ECF No. 41, Ex. D, 50:16-19) ("I don't have [a diary anymore] . . . [i]t's all up here.").

Susan H. Maxen ("Maxen"), the notary who notarized Indemnity Agreement 03, also expresses some doubt that Mrs. Cole executed the agreement because "[Mrs. Cole's] name does not appear anywhere on the notary public certification page." (ECF No. 40, Ex. Q, ¶ 6).  Maxen further states her "notary public seal does not appear to be affixed to [Indemnity Agreement 03]," (ECF No. 40, Ex. Q, ¶ 6), but this is misleading; indeed, Maxen made this statement while viewing a photocopy where the seal was not discernable. (ECF No. 41, p. 21; *see also* ECF No. 41, Ex. D, 36:4-37:3 (attesting that the notarial seal is present on Indemnity Agreement 03)).

The Coles also highlight that the "execution date" stated on the first page of Indemnity Agreement 03 is November 6, 2003, but the notary public certification page is dated January 6, 2004. (ECF No. 40, pp. 2-3). They further offer Maxen's statement that she "would not have notarized a document that was signed outside of [her] presence two months before." (ECF No. 40-19, Ex. Q, ¶ 10; ECF No. 40, p. 3).

Despite all of the Coles' arguments, however, it is undisputed that Maxen's seal *is* present on Indemnity Agreement 03. (ECF No. 1, Ex. B, p. 10; *see also* ECF No. 41, Ex. D, 36:4-37:3 (attesting that the notarial seal is present on Indemnity Agreement 03)). And no reasonable factfinder could conclude that ("wife") on the notarial page refers to Mrs. Liparini instead of Mrs. Cole given Mrs. Liparini did not sign the agreement while Mrs. Cole did, Mrs. Liparini's name was redacted from the notarial page, and the sequential order of "(wife)" after Mr. Cole's name on the signature page matches the notarial page. Nothing the Coles have presented overcomes these facts. Therefore, I find no "genuine dispute of material fact" regarding Mrs. Cole's signature on Indemnity Agreement 03, *Liberty Lobby*, 477 U.S. at 247-48, and because "[a] certificate under the notarial seal of a notary *shall* be sufficient evidence of the notary having administered the oath as notary public," Md. Code Ann., State Gov't § 18-105, I find Mrs. Cole properly executed Indemnity Agreement 03.

## B. Applicable Limitations Period

Developers next asserts various arguments to overcome the default three-year statute of limitations bar on civil actions in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 5-101. These arguments are predominantly unsuccessful, and I assess them in turn.

### i.   *Joint and Several Liability*

Developers first argues the Coles are necessarily liable, regardless of any limitations issues, by virtue of joint and several liability. Although both Indemnity Agreements clearly state "[t]he obligations of Principal and Indemnitor . . . are *joint and several*," and "[s]urety may bring separate suits hereunder against *any or all* of the undersigned as causes of action may accrue," (ECF No. 1, Ex. A, p. 7 & Ex. B, p. 6) (emphasis added), Developers' argument is incorrect. While it is true that, under Maryland law, "the words 'joint and several' are oft used and seemingly well understood" and have never "been interpreted so as to bar the liability of either obligor," *President & Directors of Georgetown Coll. v. Madden*, 505 F. Supp. 557, 598 (D. Md. 1980), *aff'd in part, appeal dismissed in part*, 660 F.2d 91 (4th Cir. 1981), the Coles are not automatically liable simply because a default judgment has been issued against Brantly, Bonnielass, Marshalee, and Brantwood. (*See* ECF No. 41, p. 27). First, the default judgment entered against those co-parties is not final, but rather interlocutory in nature. "[A] final judgment cannot be entered on the default until the issue as to the other defendants is successfully disposed of." *U.S. for Use of Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (citing 49 C.J.S. Judgments § 191b(2), at 329 (1947)). More importantly, although the *Westfield* case cited by Developers stands for the proposition that defendants and indemnitors can be held jointly and severally liable when one party breaches an indemnity agreement, no party raised any defenses in that case. *See Westfield Ins. Co. v. Site Maint., Inc.*, No. PWG-12-3145, 2013 WL 5964505, at *4 (D. Md. Nov. 6, 2013). Accordingly, the Coles are entitled to raise defenses not raised by defaulting co-parties, such as a statute of limitations defenses, and are not necessarily liable merely because the two indemnity agreements contain joint and several liability clauses.

### ii.    *Sealed Instruments*

Developers next argues the Indemnity Agreements are contracts "under seal" and are therefore subject to the twelve-year limitations period applicable to specialties. Md. Code Ann., Cts. & Jud. Proc. § 5-102(a). The Coles, however, argue that contracts were not executed "under seal" and thus the standard three-year period of limitations for civil actions applies. *Id.* at § 5-101. Accordingly, the applicable limitations period depends on whether Indemnity Agreements 01 and 03 were executed "under seal."

What is sufficient to constitute a seal under Maryland law depends on whether the signor is an individual or a corporation. *See Mayor & Council of Federalsburg v. Allied Contractors, Inc.*, 338 A.2d 275, 279 (Md. 1975) (highlighting the difference between what constitutes a seal in the corporate and individual context). Indeed, when contracts are executed by individuals, the presence of the word "seal" on the signature page of the contract, or the presence of a seal itself, may be sufficient in and of itself to render the contract "under seal" for purposes of the special limitations period. *Id.*; *see also Warfield v. Balt. Gas & Elec. Co.*, 512 A.2d 1044, 1044 (Md. 1986) (holding "that the inclusion of the word 'seal' in a pre-printed form executed by an individual is sufficient to make the instrument one under seal."). For such a contract, a "recital of the sealing or of the delivery of a written promise is not essential to its validity as a sealed contract." *Federalsburg*, 338 A.2d at 279 (citing *Gen. Petroleum Corp. v. Seaboard Terminals Corp.*, 23 F. Supp. 137, 140 (D. Md. 1938)).

In comparison, when the signor is signing on behalf of a corporation, it "requires more than the mere affixing of the corporate seal to transform a would-be simple contract into one under seal." *Id.* Such an agreement remains a simple contract "unless either the body of the contract itself indicates that the parties intended to establish an agreement under seal, or sufficient extrinsic evidence, in the nature of 'how and when and under what circumstances the

11

corporate seal was affixed' establishes that the parties desired to create a specialty." *Id.* at 279 (quoting *Gen. Petroleum Corp.*, 23 F. Supp. at 139).

Indemnity Agreement 01 contains a signature page listing indemnitors as: (1) "John F. Liparini" (a non-party), (2) "Hugh F. Cole, Jr.," and (3) Brantly Development Group, Inc. (ECF No. 1, Ex. A, p. 9). The list is accompanied by signatures: Mr. Liparini signed for himself individually and on behalf of Brantly as its President, and Mr. Cole signed on behalf of himself individually. *Id.* Mrs. Cole did not sign Indemnity Agreement 01. *Id.* The only signature containing the text "(Seal)" next to it was Mr. Liparini's on behalf of Brantly. *Id.* Notably, the signatures of Mr. Liparini and Mr. Cole, individually, are devoid of the "(Seal)" text. *Id.* Furthermore, there is no explicit language, such as "witness my hand and seal" or "signed and sealed," in the text of Indemnity Agreement 03 to suggest this is a contract under seal. *See, e.g., President & Directors of Georgetown Coll. v. Madden*, 660 F.2d 91, 96 (4th Cir. 1981) (finding that a contract was not under seal, despite having the word "(Seal)" in two places and containing corporate seals because it did not contain familiar phrases indicating the contract was under seal to suggest the parties "intended to make the contract a sealed instrument").

Despite this, Developers stresses Indemnity Agreement 01 is followed by a "RESOLUTION – RATIFYING INDEMNITY" whereby Brantly formally adopted the Indemnity Agreement. (ECF No. 1, Ex. A, p. 13). This Resolution, signed on the same day as Indemnity Agreement 01, contains the text: "Given under my hand the seal of the Company," and is signed by Mr. Cole in his capacity as Secretary of Brantly. *Id.* Here, Mr. Cole's signature is accompanied by the text: "(Seal)." *Id.* The parties disagree over whether this ratification renders Indemnity Agreement 01 "under seal." But even if the ratification rises to the level of "extrinsic evidence" that would render Indemnity Agreement 01 under seal, *see Federalsburg,*

338 A.2d at 279, it would only be under seal with respect to Brantly, and not to the Coles. Indeed, "when a seal is attached to the signature of one of the parties but not to that of the other party, the contract as to the latter is a simple contract while as to the former it is a contract under seal." *Id.* at 279. Accordingly, even if the resolution ratifying indemnity renders Indemnity Agreement 01 under seal, an issue I do not decide here, it would have no bearing on whether the document is under seal with respect to the Coles.

Indemnity Agreement 03, like Indemnity Agreement 01, also contains a signature page and lists five indemnitors, including "Hugh F. Cole, Jr., Individually" and "(wife); Individually." (ECF No. 1, Ex. B, p. 8). These signatures are not accompanied by any seal, nor are they accompanied by the text: "(Seal)." *Id.* Again, there is no explicit language, such as "witness my hand and seal" or "signed and sealed," in the text of Indemnity Agreement 03 to suggest this is a contract under seal. Although the next page in the agreement contains the notarial seal of Maxen, acknowledging under her "hand and official seal" that the following persons "PERSONALLY APPEARED" and signed the indemnity agreement: "John F. Liparini; [Redacted: Kathleen Liparini]; Hugh F. Cole, Jr.; (wife)," *id.* at 10, this does not render the document "under seal" with respect to the Coles. Rather, Maxen's notarial seal merely confirms the specified individuals were present and signed the agreement.

Like Indemnity Agreement 01, Indemnity Agreement 03 is also followed by a "RESOLUTION – RATIFYING INDEMNITY"; this resolution also contains the text "Given under my hand the seal of the Company," and is signed by Hugh F. Cole, Jr., as "(Secretary)" of Brantly. *Id.* at 11. As discussed, *supra*, even this ratification rises to the level of "extrinsic evidence" that would render Indemnity Agreement 03 under seal, *Federalsburg*, 338 A.2d at 279, it would only be under seal with respect to Brantly, and not to the Coles.

Accordingly, I find neither Indemnity Agreement is a contract "under seal" and therefore the claims are subject to the standard three-year limitations period applicable to civil actions.

### iii.    Surety Bond Indemnification Agreements are all Specialties

Developers next argues the Indemnity Agreements, as a matter of statutory law, are specialties and are therefore subject to a twelve-year limitations period. (ECF No. 41, p. 24). To support this argument, Developers relies on *Madden*, where the court evaluated the statute of limitations for an indemnification action and found it would make "little sense" to allow a surety "nine years more of potential liability than the principal it has insured." *Madden*, 505 F. Supp. at 596. There, the *Madden* court decided that barring the surety from proceeding against a principal after three years would "*eliminate the operation of equitable principles of suretyship law* when the statute of limitations has run as to the claim of the obligee against the principal but not as to the claim of the obligee against the surety." *Id.* (emphasis added). However, Developers errs in its reliance on *Madden* because, as the Coles point out, that case stands for the proposition that the surety (Developers) can proceed against the bond *principals* (e.g., Bonnielass, Brantwood, and Marshalee) within the twelve-year limitations period, and not the *third-party indemnitors* Mr. and Mrs. Cole. (ECF No. 42, p. 7); *see also Madden*, 505 F. Supp. at 596. Accordingly, because the Coles are not principals, the limitations period with respect to them is not automatically transformed into a twelve-year period as Developers contends.

### iv.    Doctrine of Acknowledgement

Developers also argues that Mr. Cole's "acknowledgement of the debt to Developers" removes any statute of limitations bar. (ECF No. 41, p. 28). "Maryland law has long recognized that an acknowledgment of a debt barred by the statute of limitations removes the bar and revives the remedy." *Columbia Ass'n, Inc. v. Poteet*, 23 A.3d 308, 320 (Md. Ct. Spec. App. 2011); *see*

14

*also Jenkins v. Karlton*, 620 A.2d 894, 904 (Md. 1993). The Court of Appeals explained the

rationale underlying the doctrine of acknowledgment in *Barney v. Smith*, 4 H. & J. 485, 495-96

(1819):

> [T]he Act of Limitations does not operate to extinguish the debt, but to bar the
> remedy. The Act of Limitations is predicated on the principle, that from length of
> time a presumption is created that the debt has been paid, and that the debtor is
> deprived of his proof by the death of his witnesses or the loss of receipts. It is the
> design of the Act of Limitations to protect and shield debtors in such a situation;
> and consistent with this principle and this view, the decisions have been made,
> that *the acknowledgment or admission of the debtor will take the case out of the
> Act of Limitations*, because if the money is still due and owing, the defendant has
> not suffered from lapse of time, nor has any inconvenience resulted to him
> therefrom.

In order to remove the bar of the statute of limitations, an acknowledgment "requires an

admission by the debtor, in word and/or deed, *that the debt is still owed by the debtor.*" *Poteet*,

23 A.3d at 322 (citing *Barney*, 4 H. & J. at 495) (emphasis added). It is therefore not enough for

the debtor to merely acknowledge that "the creditor claims a debt is owed"; what is needed

instead is an acknowledgement that the "debtor admits an obligation to pay the debt." *Id.*

Furthermore, "[t]he acknowledgment must be a clear, distinct, and unqualified admission."

*Doughty v. Bayne*, 160 A.2d 609, 611 (Md. 1960) (citing *Crawford v. Richards*, 79 A.2d 143,

145 (Md. 1951)). The "evidence of the acknowledgment must also be considered *in its entirety*,

and the creditor cannot accept the admission and reject any qualification that might make the

acknowledgment ineffective." *Bayne*, 160 A.2d at 611 (emphasis added).

In *Poteet*, the Maryland Court of Special Appeals had to determine whether appellees

Joseph Poteet and Shirley Clarke-Poteet acknowledged an outstanding debt that appellant

Columbia Association could not otherwise collect because the statute of limitations had run.

*Poteet*, 23 A.3d at 319-22. Columbia argued the statute of limitations was removed because the

Poteets acknowledged certain charges had not been paid between 1973 and 2006. *Id.* at 322. The

court, however, disagreed with Columbia, noting "although the Poteets did, in fact, acknowledge receiving Columbia's billing statements" for the outstanding debt, they "never admitted that they owed any of the [debt]"; indeed, the Poteets "expressly denied any such obligation." *Id.* at 322. In essence, the Poteets' acknowledgment that Columbia *claimed* the existence of a debt was not sufficient to remove the statute of limitations bar because they did not acknowledge they *owed* a debt to Columbia. *Id.*

In the present case, Developers alleges "throughout Mr. Cole's deposition testimony, Mr. Cole acknowledged that he is liable to Developers for some of Developers' losses," and that these acknowledgements are "sufficient to remove the bar of the statute of limitations." (ECF No. 41, p. 28). To support this argument, Developers' cites to numerous instances in Mr. Cole's testimony where Mr. Cole attests, *inter alia*: (1) that certain work did not get completed; and (2) that he has no facts to support the various costs incurred by Developers were unreasonable. *Id.* at pp. 9-16, ¶¶ 26-43. In reviewing the testimony, however, I find only one instance where Mr. Cole sufficiently acknowledged a debt. In every other instance, although Mr. Cole seemingly admits to the existence of a reasonable debt claimed by Developers, he does not acknowledge "in word and/or deed, that the debt is still *owed by [him]*." *Poteet*, 23 A.3d at 322 (citing *Barney*, 4 H. & J. at 495) (emphasis added). Furthermore, although Mr. Cole was repeatedly asked during deposition whether he was "personally and individually liable to Developers" for certain alleged debts, (*see, e.g.*, ECF No. 41, Ex. C, 126:19-128:3), questions that his counsel repeatedly stated timely objections to,[3] Mr. Cole's answers generally did not amount to a "clear, distinct, and unqualified admission." *Bayne*, 160 A.2d at 611 (citing *Richards*, 79 A.2d at 145). For example:

---

[3] Counsel for Mr. Cole repeatedly objects to these questions but does not specify the basis for these objections; in briefing, counsel suggests these objections were made on the grounds Mr. Cole's responses amount to "seeking opinions of law from a lay witness." (ECF No. 42, p. 12).

Q. Okay. Do you agree that you are personally and individually liable to Developers for that amount, under the terms of the indemnity agreement, dash 01?

MR. LEWICKY: Objection. You can answer.

*A. Yes and no.*

Q. Okay. Can you explain your answer, please?

A. Yes. The amount is subject to – the amount is subject to further -- further investigation -- that's too strong a word – but further analysis.

(ECF No. 41, Ex. C, 126:19-127:9) (emphasis added). In another instance:

Q. And would you agree that you are responsible to reimburse Developers for the amount of the – the amount of $35,123 that was paid to LDE, Inc.?

MR. LEWICKY: Objection. You can answer, if you understand.

*A. Again, I would qualify it. Did they did they negotiate with LDE, per Mr. Liparini's statement to Mitch in the email that you have here, and negotiate a fee less than 35, 000?*

Q. And sitting here today, do you have any facts –

A. No.

*Id.* at 126:19-127:9 (emphasis added).

As previously stated, however, Mr. Cole did make one unqualified admission of

debt.  Regarding a payment of $24,999.92 that Developers paid to Gradeline

Construction Company, Inc. as a result of defendants' default:

Q. And would you agree that you're responsible to Developers – to reimburse Developers for the amounts that Developers gave to Gradeline to satisfy this payment bond claim in the amount of $24,999.92?

MR. LEWICKY: Objection. You can answer, if you understand.

*A. Yes.*

Q. Yes?

*A. It was 25,000.*

Q. Okay. And you agree that you're responsible?

17

*A. Yes.*

*Id.* at 171:3-15 (emphasis added).  This statement does satisfy the standard for acknowledging a debt, and therefore the bar of the statute of limitations as it pertains to this debt is lifted.

For all other debts discussed at deposition, Mr. Cole's statements, when taken "in their entirety," *Bayne*, 160 A.2d at 611, do not amount to "a clear, distinct, and unqualified admission," *id.* at 611, "in word and/or deed, that the debt is still owed by [him]," *Poteet*, 23 A.3d at 322 (citing *Barney*, 4 H. & J. at 495).  Accordingly, I find Mr. Cole did not remove the bar of the statute of limitations and breathe new life into his debts through the doctrine of acknowledgement with the exception of the $24,999.92 Gradeline debt.

## C.  Liability and Damages

Surety bonds and indemnification agreements are contracts and are "to be construed as such." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 468 (Md. 2004) (citing *John McShain, Inc. v. Eagle Indem. Co.*, 23 A.2d 669, 670 (Md. 1942)).  Thus, the principal or third-party indemnitor is liable "to a surety under an indemnification agreement" if they "breached the indemnification agreement by failing to indemnify the surety after the surety incurred a loss on a bond." *Westfield Ins. Co. v. Site Maint., Inc.*, No. PWG-12-3145, 2013 WL 5964505, at *3 (D. Md. Nov. 6, 2013).

The undisputed facts here show that defendants breached the terms of Indemnity Agreements 01 and 03 by failing to indemnify Developers after Developers incurred losses on the various subdivision bonds. (ECF No. 41, pp. 9-16).  Indeed, the Coles do not suggest in their briefs that defendants *did not* breach the terms of the agreements. (*See* ECF No. 40 & ECF No. 42).  And as previously discussed *supra*, a three-year statute of limitations applies, as opposed to

18

a twelve-year statute of limitations.  With liability established, two issues still remain in order to assess damages: (i) when should the three-year statute of limitations period start accruing; and (ii) how much recovery, if any, is Developers entitled to.

### i.      *Limitations Period Accrues from when Developers Incurred Payments*

The Coles argue various theories for when the statute of limitations period should start accruing, including, *inter alia,* from when Developers "knew or reasonably should have known [a] claim had been asserted by third parties against the underlying bond(s)," and from when Developers had "investigated such claims sufficiently to know that they were meritorious and likely to make Plaintiff responsible for payment." (ECF No. 40, pp. 16, 22).  These arguments are misguided and misleading.  As Developers correctly points out, in contractual indemnification claims, Maryland courts calculate accrual of action from "the time *payment was made* by the party seeking indemnification." *Sherwin-Williams Co. v. ARTRA Grp., Inc.*, 125 F. Supp. 2d 739, 757 (D. Md. 2001) (citing *Southern Maryland Oil Co. v. Texas Co.,* 203 F. Supp. 449, 452-53 (D. Md. 1962)) (emphasis added).  Specifically, *each payment* Developers made "for which it seeks to be indemnified" would "begin the running of the statute of limitations anew," and Developers is only "entitled to recover for those costs it incurred within three years of the time it filed suit." *Sherwin-Williams,* 125 F. Supp. 2d at 757.

### ii.     *Recovery*

Given that Developers filed its complaint on November 13, 2015 and the three-year statute of limitations period started accruing from when Developers made each payment, the table below summarizes the timeliness of Developers' losses.

FIGURE 1: TIMELINESS ASSESSMENT

| Indemnity Agreement | Bond Number | Developers' Losses | Claimant/Payee | Date of Payments | Timely Amount |
|---|---|---|---|---|---|
| 13522-01 | 891076S/ 890955S | $30,419.03 | Hatfield's Litigation | 3/24/2011[4] | $0.00 |
| | 890383S | $94,532.00 | Howard County | 5/24/2013[5] | $94,532.00 |
| | 890955S | $26,250.00 | Griffith Bros. | 1/30/2013 to 2/20/2013[6] | $26,250.00 |
| | | $278.00 | Howard County | 10/22/2013[7] | $278.00 |
| | | $7,917.07 | Guardian Group | 7/18/2012 to 11/4/2013[8] | $4,342.42 |
| | 891425S | $35,123.20 | LDE, Inc | 12/9/2011[9] | $0.00 |
| | | $24,999.92 | Gradeline | 1/13/12[10] | $24,999.92[11] |
| 13522-03 | 893560S | $16,096.97 | Guardian Group | 6/30/2011 to 7/19/2016[12] | $5,927.28 |
| | | $56,746.22 | Dirt Plus, Inc. | 8/10/2011 to 1/16/2014[13] | $15,241.22 |
| | | $11,626.55 | Boyd & Dowgiallo | 11/16/2011 to 1/16/2014[14] | $6,582.50 |
| | | $5,539.00 | BG&E | 10/4/2011[15] | $0.00 |

Therefore, losses of $150,404.34 associated with Indemnity Agreement 01 are not time-barred,

and losses of $27,751.00 associated with Indemnity Agreement 03 are not time-barred.

In addition to these payments, Developers seeks damages for outstanding premiums owed

on Developers' bonds. Specifically: (1) $1,422.00 is owed on Marshalee Performance Bond No.

---

[4] Total for retaining attorneys for the Hatfield's litigation, $6,592.81, and to satisfy the partial judgment in favor of Hatfield, $23,826.22. (ECF No. 41, pp. 15-16, ¶¶ 42-43; ECF No. 41-9, Ex. I, pp. 35-36; ECF No. 41, Ex. KK).

[5] (ECF No. 41-9, Ex. I, p. 23).

[6] (ECF No. 41-9, Ex. I, pp. 16-18).

[7] (ECF No. 41-9, Ex. I, p. 20).

[8] $3,574.65 paid prior to Nov. 13, 2012. (ECF No. 41-9, Ex. I, pp. 20-21).

[9] (ECF No. 41-9, Ex. I, p. 25).

[10] (ECF No. 41-9, Ex. I, p. 27).

[11] Although the date of the last payment was greater than three years prior to the date of the complaint, this debt was renewed through acknowledgement. *See supra* section I(A)(iv).

[12] $10,169.69 paid prior to Nov. 13, 2012. (ECF No. 41-9, Ex. I, pp. 29-30, 42).

[13] $41,505.00 paid prior to Nov. 13, 2012. (ECF No. 41-9, Ex. I, pp. 29-30).

[14] $5,044.05 paid prior to Nov. 13, 2012. (ECF No. 41-9, Ex. I, pp. 29-30; ECF No. 41, Ex. EE).

[15] (ECF No. 41-9, Ex. I, p.32-3).

890176S; (2) $2,838.00 is owed on Brantwood Forest Conservation Agreement Performance
Bond No. 890383S; (3) $10,937.00 is owed on Brantwood Labor and Material Payment Bond
No. 890955S; (4) $17,166.00 is owed on Brantwood Performance Bond No. 891425S; and (5)
$7,595.00 is owed on Bonnielass Labor and Material payment Bond No. 893560S. (ECF No. 41-
9, Ex. I, ¶ 6, 38-40). The three-year statute of limitations applies to these outstanding premiums
as well. Adding together gross premiums with an effective date after November 13, 2012, and
subtracting credits for cancellation, I find the amount associated with Indemnity Agreement 01
that is not time-barred is $2,057.00,[16] and the amount associated with Indemnity Agreement 03
that is not time-barred is $3,255.00.[17]

In sum, losses and outstanding premiums associated with Indemnity Agreement 01 total
$152,461.34, and losses and outstanding premiums associated with Indemnity Agreement 03
total $31,006.00.

*     *     *

Because there is no genuine issue of material fact as to whether defendants breached the
two Indemnity Agreements, and given the discussion *supra*, summary judgment is appropriate
for Developers on its breach of contract claims (Counts I and II). Specifically, summary
judgment is appropriate for the amount not time-barred against Mr. Cole on Count I and against
both Mr. Cole and Mrs. Cole on Count II. Accordingly, I grant Developers' cross-motion for
summary judgment, and I deny the Coles' motion for partial summary judgment, as they relate to
Counts I and II of Developers' complaint.

## II.    Count III: Exoneration

---

[16] Outstanding premiums on Bond Nos. 890176S and 890383S are time-barred. (ECF No. 41-9,
Ex. I, 39). On Bond No. 890955S, $1,379.00 is not time-barred ($3,186.00 renewal fee minus
$1,807.00 credit for cancellation), and $678 is not time-barred on Bond No. 891425S ($4,122.00
renewal fee minus $3,444.00 credit for cancellation). *Id.*

[17] On Bond No. 893560S, three payments of $1,085.00 are not time-barred. *Id.* at 38.

In Count III, Devleopers asserts a common law claim of exoneration against the Coles.
According to Black's Law Dictionary, exoneration is:

> The equitable right of a surety — confirmed by statute in many states — to
> proceed to compel the principal debtor to satisfy the obligation, as when, even
> though the surety would have a right of reimbursement, it would be inequitable
> for the surety to be compelled to perform if the principal debtor can satisfy the
> obligation.

Exoneration, Black's Law Dictionary (10th ed. 2014).  In essence, "[t]he doctrine of equitable
exoneration makes the burden on the surety lighter." *Madden*, 505 F. Supp. at 593.

To support this argument, Developers cites to the Indemnity Agreements which state:
"Principal and Indemnity shall, upon request of Surety, procure the discharge and exoneration of
Surety under any Bond and from and against any and all liability by reason thereof." (ECF No. 1,
Ex. A, p. 7 & Ex. B, p. 6).  The parties disagree over whether exoneration applies only to bond
principals or also to third-party indemnitors. (ECF No. 40, p. 26; ECF No. 41, p. 30).  I find this
unnecessary to decide.  Developers acknowledges its claim for exoneration is "an alternative
theory of recovery to the claims for breach asserted in Counts I and II." (ECF No. 41, p. 30).
Because I have already found for Developers on its breach of contract claims for the amount that
is not time-barred, I deny Developers' exoneration claim.  Not only will Developers recover
what it is entitled to under its breach of contract claim, I find the exoneration claim should be
subject same statute of limitations issues discussed *supra* in section (I)(B).

Accordingly, I grant the Coles' motion for summary judgment, and I deny Developers'
cross-motion for summary judgment, as they relate to Count III of Developers' complaint.

### III.    Attorneys' Fees

Developers asserts that the Coles are also liable for Developers' attorneys' fees, which
amount to $42,718.31. (ECF No. 41, p. 34-35).  The Indemnity Agreements, which both Mr. and
Mrs. Cole executed as discussed *supra*, state:

Principal and Indemnitor shall . . indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, *attorneys' fees* and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal.

(ECF No. 1, Ex. A, p. 1; Ex. B, p. 1) (emphasis added).

Maryland follows the common law "American Rule," whereby a party is not generally awarded attorneys' fees. However, there are exceptions to this rule, including where "the parties to a contract have an agreement to that effect," *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 281 (Md. 2008) (citing *Thomas v. Gladstone,* 874 A.2d 434, 437 (Md. 2005)), and these agreements "to pay legal fees [are] generally valid and enforceable," *Argonaut Ins. Co. v. Wolverine Const., Inc.*, 976 F. Supp. 2d 646, 656 (D. Md. 2013) (citing *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 476-77 (Md. 2004)). Indeed, "[i]ndemnity agreements of this kind are interpreted generally to entitle the surety to recover fees, costs, and expenses incurred in enforcing them." *Id.* (citing *Atl. Contracting,* 844 A.2d at 468). The court must, however, also "examine the fee request for reasonableness, even in the absence of a contractual term specifying that the fees be reasonable." *Atl. Contracting,* 844 A.2d at 478 (citing *Rauch v. McCall,* 761 A.2d 76, 84 (Md. Ct. Spec. App. 2000)). This reasonableness inquiry "begins with the guidelines" first adopted by this Court in 2008, *Blake v. Baltimore Cty., Md.,* 12 F. Supp. 3d 771, 775 (D. Md. 2012), and fees within the guidelines ranges have been presumed reasonable, *Hanover Ins. Co. v. Persaud Companies, Inc.*, No. GJH-13-472, 2015 WL 4496448, at *4 (D. Md. July 22, 2015) (finding rates charged by Pike & Gilliss to "fall within the guidelines" and therefore "be reasonable").

Here, Developers has been represented by two attorneys, Shannon J. Briglia and Shoshana E. Rothman. (ECF No. 41, p.34). Ms. Briglia has practiced law for over twenty-eight

years, and her hourly rate for Developers was discounted to $275.00 per hour. *Id.* Ms. Rothman

has practiced law for ten years, and her hourly rate for Developers was discounted to $240.00 per

hour. *Id.* Ms. Rothman's hourly rate is well within the guidelines ranges, and Ms. Briglia's rate

is actually below the guidelines ranges. *See* MD R USDCT CIV App. B (July 1, 2016).

Accordingly I find both rates to be reasonable. Furthermore, Mrs. Briglia attests the hours

expended by her firm and the costs incurred by Developers to be reasonable.[18] (ECF No. 41, Ex.

II, ¶¶ 9-10).

There is, however, one critical issue with this request for attorneys' fees. Developers'

claim for attorneys' fees totals $42,718.31 and includes a $6,592.81 fee for defending Hatfield's

Litigation between March 2010 and March 2011. (ECF No. 41, Ex. II, ¶¶ 9) ("Of the total

attorneys' fees and costs incurred by Developers for the Hatfield's Litigation, $6,592.81 was

associated with the bonds at issue in this indemnity litigation"). This $6,592.81 amount was also

included in the breach of contract claim and found to be untimely. *See supra* FIG. 1. Developers

is simply not entitled to collect this amount by re-characterizing the losses as attorneys' fees,

thereby circumventing the statute of limitations issues discussed *supra* in I(C)(ii). Accordingly,

an award for attorneys' fees will exclude the amount for defending Hatfield's Litigation and

instead be limited to $36,125.50.

## CONCLUSION

For the aforementioned reasons, the Coles' motion for partial summary judgment (ECF

No. 40) is granted in part and denied in part, and Developers' cross-motion for summary

judgment (ECF No. 41) is granted in part and denied in part. A separate order follows.

---

[18] Mrs. Briglia attests that: (1) 78 hours were expended by her firm defending "Hatfield's Litigation"; (2) 102.7 hours were expended pursuing this indemnity litigation; and (3) 74 hours were expended to conduct discovery and prepare and file dispositive motions. (ECF No. 41, Ex. II, ¶¶ 9-10).

Date: _Oct. 6, 2016_

J. Frederick Motz
United States District Judge